UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

JAMES TAMBONE and
ROBERT HUSSEY,

Defendants.

CIVIL ACTION
NO. 05-10247-NMG

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ROBERT HUSSEY'S MOTION TO DISMISS THE COMPLAINT**

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
(617) 338-9300

Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019
(212) 878-8000

Attorneys for Defendant Robert Hussey

NYB 1497212.5

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT .......................................................................................................... 3

I.    Standard for a Motion to Dismiss ................................................................. 3

II.   The Complaint Fails to Allege a Legally Cognizable Fraud Claim Against Mr. Hussey ........................................................................................................ 3

        A.    The Alleged Market Timing Arrangements Do Not Amount To Fraudulent Conduct ..................................................................... 4

                1.    The Complaint Fails to Allege a Misstatement ........................... 4

                2.    The Complaint Fails to Allege any Material Misstatement Attributable Specifically to Mr. Hussey .......................... 7

                3.    The Complaint Fails to Allege any Material Omission Attributable to Mr. Hussey ......................................... 9

                4.    The Complaint Fails to Sufficiently Allege that Mr. Hussey Participated in a Scheme to Defraud ........................... 10

        B.    The Complaint Fails to Allege Specific Facts that Create a "Strong Inference" of Fraudulent Intent ................................... 12

        C.    The Commission Fails to Allege Fraud with the Requisite Particularity ........... 14

III.  The Complaint Fails to Adequately Allege that Mr. Hussey Aided and Abetted a Predicate Violation ........................................................................ 16

IV.   The Complaint Violates Due Process ........................................................... 17

V.    The Statute of Limitations Has Run for Allegations Pre-Dating February 2000 ........... 19

CONCLUSION ...................................................................................................... 20

NYB 1497212.5

# TABLE OF AUTHORITIES

## CASES

*Aaron v. SEC,*
446 U.S. 680 (1980) .................................................................................... 3

*Aldridge v. A.T. Cross Corp.,*
284 F.3d 72 (1st Cir. 2002) ............................................................ 3, 11, 13

*Antell v. Arthur Andersen LLP,*
1998 WL 245878 (N.D. Ill. May 4, 1998) ............................................... 20

*Asdar Group v. Pillsbury, Madison & Sutro,*
99 F.3d 289 (9th Cir. 1996) ..................................................................... 20

*Austin v. Bradley, Barry & Tarlow, P.C.,*
836 F. Supp. 36 (D. Mass. 1993) ............................................................ 10

*Backman v. Polaroid Corp.,*
910 F.2d 10 (1st Cir. 1990) ....................................................................... 9

*Bovee v. Coopers & Lybrand,*
216 F.R.D. 596 (S.D. Ohio 2003) ........................................................... 20

*Burstein v. Applied Extrusion Techs., Inc.,*
150 F.R.D. 433 (D. Mass. 1993) ............................................................. 15

*In re Cabletron Sys., Inc.,*
311 F.3d 11 (1st Cir. 2002) ....................................................................... 3

*Chiarella v. United States,*
445 U.S. 222 (1980) ................................................................................... 9

*Chongris v. Bd. of Appeals,*
811 F.2d 36 (1st Cir. 1987) ....................................................................... 3

*Cleary v. Perfectune Inc.,*
700 F.2d 774 (1st Cir. 1983) ................................................................... 16

*In re Comshare Inc. Sec. Litig.,*
183 F.3d 542 (6th Cir. 1999) ................................................................... 12

*Cook v. Avien, Inc.,*
573 F.2d 685 (1st Cir. 1978) ................................................................... 12

*Decker v. Massey-Ferguson, Ltd.,*
681 F.2d 111 (2d Cir. 1982) .................................................................... 12

NYB 1497212.5

*Decker v SEC*,
    631 F.2d 1380 (10th Cir. 1980) ................................................................................. 16

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ........................................................................................... 3, 10

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc.*,
    164 F. Supp. 2d 383 (S.D.N.Y. 2001) ...................................................................... 11

*Garvey v. Arkoosh*,
    2005 WL 273135 (D. Mass. Feb. 4, 2005) ............................................................ 9, 12

*Geman v. SEC*,
    334 F.3d 1183 (10th Cir. 2003) ................................................................................. 4

*In re Global Crossing, Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004) ........................................................................ 9

*Graham v. SEC*,
    222 F.3d 994 (D.C. Cir. 2000) ................................................................................. 16

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999) .............................................................................. 12, 14

*Greenstone v. Cambex Corp.*,
    777 F. Supp. 88 (D. Mass. 1991) ............................................................................... 9

*Gross v. Summa Four, Inc.*,
    93 F.3d 987 (1st Cir. 1996) ....................................................................................... 4

*In re Indep. Energy*,
    154 F. Supp. 2d 741 (S.D.N.Y. 2001) ...................................................................... 12

*Johnson v. SEC*,
    87 F.3d 484 (D.C. Cir. 1996) ................................................................................... 19

*In re Kendall Square Research Corp. Sec. Litig.*,
    868 F. Supp. 26 (D. Mass. 1994) ............................................................................... 8

*Kilmartin v H.C. Wainwright & Co.*,
    637 F. Supp. 938 (D. Mass. 1986) ........................................................................... 14

*Landy v. FDIC*,
    486 F.2d 139 (3d Cir. 1973) .................................................................................... 17

*In re Lernout & Hauspie Sec. Litig.*,
    230 F. Supp. 2d 152 (D. Mass. 2002) ..................................................................... 8, 9

NYB 1497212.5

*In re Lernout & Hauspie Sec. Litig.*,
    236 F. Supp. 2d 161 (D. Mass. 2003) ..................................................................11

*In re Livent Inc. Noteholders Sec. Litig.*,
    174 F. Supp. 2d 144 (S.D.N.Y. 2001) ....................................................................8

*Maldonado v. Dominguez*,
    137 F.3d 1 (1st Cir. 1998) ...................................................................................12

*Mfr's Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    2000 WL 709006 (S.D.N.Y. June 1, 2000) ............................................................12

*Milton v. Van Dorn Co.*,
    961 F.2d 965 (1st Cir. 1992) ..................................................................................9

*O'Brien v. DiGrazia*,
    544 F.2d 543 (1st Cir. 1976) ..................................................................................3

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
    98 F.3d 2 (2d Cir. 1996) ....................................................................................4, 5

*Pagel v. SEC*,
    803 F.2d 942 (8th Cir. 1986) ................................................................................11

*Primavera Familienstiftung v. Askin*,
    1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ....................................................11, 20

*Quaak v. Dexia, S.A.*,
    357 F. Supp. 2d 330 (D. Mass. 2005) ..................................................................20

*Roeder v. Alpha Indus. Inc.*,
    814 F.2d 22 (1st Cir. 1987) ...............................................................................9, 10

*Rogan v. Menino*,
    175 F.3d 75 (1st Cir. 1999) ....................................................................................3

*Romani v. Shearson Lehman Hutton*,
    929 F.2d 875 (1st Cir. 1991) ................................................................................14

*SEC v. Advance Growth Capital Corp.*,
    470 F.2d 40 (7th Cir. 1972) ....................................................................................8

*SEC v. Cable/Tel. Corp.*,
    90 F.R.D. 662 (S.D.N.Y. 1981) ...........................................................................14

*SEC v. Calvo*,
    378 F.3d 1211 (11th Cir. 2004) ............................................................................19

NYB 1497212.5

*SEC v. Druffner,*
    353 F. Supp. 2d 141 (D. Mass. 2005) ............................................................. 3, 14-15, 18

*SEC v. Graystone Nash, Inc.,*
    820 F. Supp. 863 (D.N.J. 1993) ........................................................................... 4

*SEC v. Lorin,*
    869 F. Supp. 1117 (S.D.N.Y. 1994) .................................................................. 19

*SEC v. PIMCO Advisors Fund Mgmt. LLC,*
    341 F. Supp. 2d 454 (S.D.N.Y. 2004) ..................................................... 8, 9, 10, 11

*SEC v. Peretz,*
    317 F. Supp. 2d 58 (D. Mass. 2004) .................................................................. 16

*SEC v. Rana Research, Inc.,*
    8 F.3d 1358 (9th Cir. 1993) ................................................................................. 4

*SEC v. Randy,*
    38 F. Supp. 2d 657 (N.D. Ill. 1999) ..................................................................... 4

*SEC v. Steadman,*
    967 F.2d 636 (D.C. Cir. 1992) .......................................................................... 16

*SEC v. Tome,*
    638 F. Supp. 596 (S.D.N.Y. 1986) ...................................................................... 4

*SEC v. Williams,*
    884 F. Supp. 28 (D. Mass. 1995) ...................................................................... 19

*Santa Fe Indus., Inc. v. Green,*
    430 U.S. 462 (1977) ......................................................................................... 10

*In re Scholastic Corp. Sec. Litig.,*
    252 F.3d 63 (2d Cir. 2001) ................................................................................. 9

*In re Seachange, Int'l Inc.,*
    2004 WL 240317 (D. Mass. Feb. 6, 2004) ........................................................... 3

*Shaw v. Digital Equip. Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ............................................................................. 14

*Upton v. SEC,*
    75 F.3d 92 (2d Cir. 1996) ............................................................................. 18, 19

*Wafra Leasing Corp. v. Prime Capital Corp.,*
    192 F. Supp. 2d 852 (N.D. Ill. 2002) ................................................................. 20

NYB 1497212.5

*Walck v. Am. Stock Exch., Inc.*,
 565 F. Supp. 1051 (E.D. Pa. 1981) ............................................................................ 16

*Waldock ex rel. John H. Waldock Trust v. M.J. Select Global, Ltd.*,
 2004 WL 2278549 (N.D. Ill. Oct. 7, 2004) .............................................................. 19

*Wells v. Monarch Capital Corp.*,
 1996 WL 728125 (D. Mass. Oct. 22, 1996) ................................................................ 8

*Windsor Sec. Inc. v. Hartford Life Ins.*,
 986 F.2d 655 (3d Cir. 1993) ...................................................................................... 17

*Wright v. Ernst & Young LLP*,
 152 F.3d 169 (2d Cir. 1998) ............................................................................. 8, 9, 10

### STATUTES & RULES

17 C.F.R. § 239 ............................................................................................................... 18

17 C.F.R. § 274 ............................................................................................................... 18

28 U.S.C. § 2462 ............................................................................................................. 19

Fed. R. Civ. P. 9(b) ......................................................................................................... 14

NYB 1497212.5

## PRELIMINARY STATEMENT

On February 9, 2005, the Securities and Exchange Commission ("Commission") filed a complaint against Robert Hussey and James Tambone (Mr. Hussey's supervisor for a portion of the relevant period) seeking a permanent injunction, disgorgement of allegedly ill-gotten gains, and civil monetary penalties ("Complaint"). The Complaint is the culmination of systematic failures, both regulatory and corporate. The Commission is now unfairly seeking to label Mr. Hussey as a "fraudster" due to those failures.

The Complaint concerns the practice of "market timing" in certain mutual funds distributed by Mr. Hussey's former employer, Columbia Funds Distributor, Inc. ("Columbia Distributor"). In this instance, the Commission has defined "market timing" as "(a) frequent buying and selling of shares of the same mutual fund or (b) buying or selling mutual fund shares in order to exploit inefficiencies in mutual fund pricing." (Compl. ¶ 22). As the Commission admits, market timing is not illegal. (Compl. ¶ 22). Indeed, at no point in its history has the Commission sought to prohibit the widespread practice now commonly referred to as "market timing." Nor did it ever provide explicit rules or clear guidance about the appropriate boundaries for such trading. Yet, notwithstanding this absence of regulation, the Commission has commenced a draconian fraud-based enforcement proceeding against Mr. Hussey for entering into, approving or knowingly permitting certain market timing arrangements. (Compl. ¶ 1). As set forth below, the Commission's pursuit of a fraud claim against Mr. Hussey – based on conduct it did not give fair notice was prohibited – violates the Due Process clause of the Constitution, and these claims therefore should be dismissed.

The Commission has focused its claims, in large part, on one sentence, taken out of context, found in the prospectuses for various mutual funds distributed by Columbia Distributor. The Commission's reliance on this single sentence is misplaced. First, the Commission has not alleged that Mr. Hussey – an executive in Columbia's sales and marketing unit – played any role in drafting, reviewing or executing any of the prospectuses in question. Thus, even to the extent that Columbia's

fund prospectuses are found to have been misleading, the Commission has failed to allege facts supporting a claim against Mr. Hussey on that basis. Moreover, reviewing the challenged prospectus language in context demonstrates that it was not misleading at all, and Mr. Hussey's alleged conduct was not inconsistent with a fair reading of that language.

The Commission's fraud claims are fatally flawed also because they fail to plead facts showing that Mr. Hussey acted with the requisite scienter. Notwithstanding that the Commission already has conducted extensive discovery in this matter, the Complaint is devoid of facts supporting its theory that Mr. Hussey engaged in knowingly misleading conduct. For example, the Complaint makes no allegation that Mr. Hussey tried to hide his actions. To the contrary, it makes plain that Columbia Management Advisors, Inc. ("Columbia Advisors") (which owed a fiduciary duty to the funds' shareholders) was made aware of and approved the arrangements allegedly entered into or approved by Mr. Hussey. (Compl. ¶¶ 7, 29, 30, 50, 55, 66, 70). The Commission alleges that Mr. Hussey's supervisor, the co-defendant in this case, was aware that Columbia Distributors was entering into market timing arrangements. (Compl. ¶ 2). There are also no allegations that Mr. Hussey was advised at any time by a compliance or legal department that his actions were contrary to the prospectus disclosures. In short, the allegations do not give rise to a strong presumption that Mr. Hussey possessed the intent to deceive or defraud anyone. Rather, the Complaint, fairly read, suggests that Mr. Hussey thought he was just doing his job in accordance with accepted company practices and industry norms at that time.

The Commission also claims that Mr. Hussey aided and abetted unasserted predicate violations by Columbia Advisors of the Investment Adviser's Act and by Columbia Distributors of the Exchange Act. These claims are fatally flawed because the Complaint fails to sufficiently plead that Mr. Hussey acted with actual knowledge of and intent to assist any predicate violation.

Finally, the Commission's claims against Mr. Hussey are based in part on alleged conduct that took place prior to February, 2000. Accordingly, those claims are barred by the five-year statute

of limitations applicable to actions brought by the Commission.  For each of these reasons, the Complaint should be dismissed with prejudice, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

I.      **Standard for a Motion to Dismiss**

On a motion to dismiss under Rule 12(b)(6), "the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *SEC v. Druffner*, 353 F. Supp. 2d 141, 147 (D. Mass. 2005) (citing *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000)). The Court must view the facts pled in the Complaint in the light most favorable to the plaintiff.  *See In re Cabletron Sys., Inc.*, 311 F.3d 11, 22 (1st Cir. 2002); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 75 (1st Cir. 2002).  However, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited" by the Court.  *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) (quoting *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990)); *see also In re Seachange, Int'l Inc.*, 2004 WL 240317, at *3 (D. Mass. Feb. 6, 2004); *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987).  Moreover, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976).  If on that basis the Court finds that "the factual averments do not justify recovery on some theory adumbrated in the complaint," the Complaint should be dismissed.  *Rogan*, 175 F.3d at 77 (citing *Leatherman v. Tarrant County N.I. & C. Unit*, 507 U.S. 163, 164 (1993).

II.     **The Complaint Fails to Allege a Legally Cognizable Fraud Claim Against Mr. Hussey**

The elements of causes of action for securities fraud under section 10(b) of the Exchange Act (and Rule 10(b)(5) thereunder), and 17(a)(1) of the Securities Act, are substantially the same.  *See*

*Aaron v. SEC*, 446 U.S. 680, 695 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976).

"To succeed on a claim for liability under these provisions the Commission must show that: (1)

defendants engaged in fraudulent conduct; (2) in connection with the purchase or sale of securities;

(3) through the means or instruments of transportation or communication in interstate commerce or

the mails; and (4) with the requisite scienter." *SEC v. Graystone Nash, Inc.*, 820 F.Supp. 863, 870-

871 (D.N.J. 1993) (citing *Aaron*, 446 U.S. at 695 and *Hochfelder*, 425 U.S. at 196).  On its face, the

Complaint fails to allege facts satisfying two of these elements: that Mr. Hussey (1) engaged in

"fraudulent conduct" and (2) acted with the requisite scienter.  Accordingly, the Section 10(b), Rule

10b-5 and Section 17(a)(1) claims should be dismissed with prejudice.

      A.     The Alleged Market Timing Arrangements
               Do Not Amount To Fraudulent Conduct

      To establish that a defendant engaged in "fraudulent conduct" as defined by the securities

laws, the Commission must show that the defendant:  (1) made an untrue statement of material fact,

(2) omitted a fact that rendered a prior statement misleading, or (3) committed a manipulative or

deceptive act as part of a scheme to defraud.  *See SEC v. Randy*, 38 F. Supp. 2d 657, 668 (N.D. Ill.

1999) (citing *Hochfelder*, 425 U.S. at 195).  *See also Gross v. Summa Four, Inc.*, 93 F.3d 987, 992

(1st Cir. 1996) (superceded by statute on other grounds); *Geman v. SEC*, 334 F.3d 1183, 1192 (10th

Cir. 2003); *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993) (citing *SEC v. Hasho*, 784

F. Supp. 1059, 1106-110 (S.D.N.Y. 1992); *SEC v. Tome*, 638 F. Supp. 596, 620 & n.46 (S.D.N.Y.

1986)).  The Complaint fails to allege sufficiently any of these with respect to Mr. Hussey.

      1.     The Complaint Fails to Allege a Misstatement

      The central question in determining if a statement is misleading is "whether defendants'

representations, taken together and in context, would have misled a reasonable investor."  *Olkey v.

Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).  The Complaint focuses on disclosure

language which, beginning in 2000, appeared in the prospectuses of certain mutual funds distributed

by Columbia Distributor. (Compl. ¶¶ 26-7).[1]  The Commission mischaracterizes this language as representing a "Strict Prohibition" against market timing.  The so-called "Strict Prohibition" language states:

> The Fund does not permit short-term or excessive trading in its shares.  Excessive purchases, redemptions or exchanges of Fund shares disrupt portfolio management and increase Fund expenses.  In order to promote the best interests of the Fund, the Fund reserves the right to reject any purchase order or exchange request particularly from market timers or investors who, in the advisor's opinion, have a pattern of short term or excessive trading or whose trading has been or may be disruptive to the Fund.  The funds into which you would like to exchange may also reject your request.

(Compl. ¶ 26).  If the disclosure ended after the first sentence, the Commission's characterization of it as a "Strict Prohibition" would make more sense.[2]  But the provision does not end there, and, as a matter of law, the first sentence must be read in the context of the entire disclosure.  *See, e.g., Olkey*, 98 F.3d at 5 ("the prospectuses must be read as a whole") (citing *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990).  In context, it is clear that the language is not a strict prohibition at all, but rather a prohibition against short-term or excessive trading that is disruptive to the fund in the investment adviser's opinion.  Thus, the prospectus quite plainly disclosed that some trades would be rejected and others would be accepted.  It was a judgment call – not a clear-cut prohibition.  Moreover, that judgment call belonged to the funds' investment adviser (*i.e.*, the individual portfolio managers employed by Columbia Advisors), not to Mr. Hussey.  Moreover, viewed from the perspective of Mr. Hussey, a non-lawyer alleged to have no role in drafting this language, it was certainly a reasonable reading of it.  Fairly read, a market timing arrangement would

---

[1]  The Complaint includes allegations concerning other disclosures, but most concern alleged misrepresentations and omissions that occurred beyond the applicable five year statute of limitations and therefore should be dismissed by the Court. (*See infra* Section V).

[2]  However, even at that, it is entirely unclear what exactly would be prohibited by this language. "Short-term" and "excessive" trading are not defined terms and suggest any such determination turns on the investment adviser's judgment.

NYB 1497212.5

conform with the terms of the so-called strict prohibition prospectus disclosure if the investment adviser approved of the arrangement.

The Complaint itself alleges that Columbia Advisors knew and approved of all but one of the alleged market timing arrangements. (Compl. ¶¶ 4, 29). The Complaint fails to specify which arrangement was not approved by Columbia Advisors, but it explicitly alleges that each of the arrangements Mr. Hussey entered into or approved had the blessing of Columbia Advisors.[3] (Compl. ¶¶ 30, 50, 55, 66, 70). Therefore, on the face of the Commission's pleadings, none of the arrangements which Mr. Hussey is alleged to have directly entered into or approved resulted in the dissemination of an untrue statement to the investing public.

---

[3]  The Complaint alleges that Mr. Hussey entered into or approved only the following five market timing arrangements: Ilytat-Newport Tiger Fund (Compl. ¶ 30); Richie-Growth Stock Fund/Short Term Bond Fund (Compl. ¶ 50); Calugar-Columbia Young Investor Fund/Growth Stock Fund (Compl. ¶ 55); D.R. Loeser-Growth Stock Fund (Compl. ¶ 66); Signalert-Growth Stock Fund/Young Investor Fund (Compl. ¶ 69). In each case the Commission alleges that, at the very least, the investment adviser expressly approved the arrangement (and on one occasion the President of the fund approved the relationship in addition to the investment adviser). (Compl. ¶¶ 30, 50, 55, 66, 70). In the case of the Ilytat-Newport Tiger Fund, the investment adviser "initially approved the arrangement" but allegedly later expressed concern with Ilytat's trading. The investment adviser's concerns in this instance do not render the relevant prospectus disclosures misleading. The so-called "Strict Prohibition" language did not appear in the Newport Tiger Fund prospectus until May 2001. (Compl. ¶ 31). However, all allegations that the investment adviser objected to Ilytat's trading in the Newport Tiger Fund concern objections which pre-dated May 2001. (Compl. ¶ 33 (June 2000), ¶¶ 34-35 (October 2000), ¶ 36 (March 2001)). The only allegation the Commission makes about the Newport Tiger Fund's pre-May 2001 prospectus is that it contained the following statement: "short-term 'market timers' who engage in frequent purchases and redemptions can disrupt the Fund's investment program and create additional transaction costs that are borne by all shareholders." (Compl. ¶ 31). The sentence, quoted by the Commission out of context, merely advises investors of the potential harm that market timers can inflict on a fund. The sentence actually appears in a disclosure entitled "Contingent Redemption Fee" which states that "the Fund will assess a contingent redemption fee in the amount of 2.00% on redemptions and exchanges of Fund shares purchased and held for five business days or less. . . . The contingent redemption fee will be paid to the Fund to help offset the transaction costs." In other words, the disclosure contemplated permissible market timing transactions (albeit for a fee). The investment adviser's pre-May 2001 concerns about Ilytat's trading in the Newport Tiger Fund have no bearing on the truth of the disclosure language taken out of context by the Commission. Therefore, as alleged, the 60 "round trips" between April 2000 to May 2001 were consistent with the fund's prospectus disclosures. Those "round-trips" cannot form the basis of a fraud claim. The Complaint does not allege that the investment adviser continued to object to the Ilytat-Newport Tiger Fund trades after the "Strict Prohibition" language appeared in the prospectus for the Newport Tiger Fund. The absence of that allegation, after the extensive discovery in this case, is telling. The Commission has, therefore, failed to allege that the Newport Tiger Fund prospectus contained a material misstatement at any time.

NYB 1497212.5

Moreover, while the Complaint focuses on the "strict prohibition" language, many of the arrangements which Mr. Hussey is alleged to have entered into or approved, pre-date that language. (Compl. ¶¶ 30, 55, 66, 69). For example, the Complaint alleges that in April 1999, Mr. Hussey entered into an arrangement, with the approval of the funds' portfolio manager, that allowed Daniel Calugar to place roundtrip trades in the Young Investor Fund and the Growth Stock Fund. (Compl. ¶ 55). However, as alleged, the Young Investor Fund and the Growth Stock Fund began including the Strict Prohibition language only in early 2001. (Compl. ¶ 60). The Complaint makes no reference to the prospectus language that was effective in April 1999, when Mr. Hussey allegedly entered into the arrangement, through "early 2001." The Commission has pled similarly with respect to the alleged Signalert Arrangement, omitting any reference to the prospectus language in force at the time Mr. Hussey allegedly entered into or approved the arrangement. (Comp. ¶¶ 69-74). Even more stark, the Commission alleges that in 1998, Mr. Hussey, the portfolio manager and the President of the fund complex, approved of an arrangement with D.R. Loeser that allowed Loeser to make up to five round trips per month in the Growth Stock Fund. (Compl. ¶ 66). As alleged, trading under the arrangement continued through May 2000. The Complaint, however, makes no reference to the effective prospectus language during that time period. By failing to allege what prospectus language governed those alleged market timing arrangements, or how those deals were inconsistent with such disclosures, the Commission fails to allege facts showing that Mr. Hussey or his employer made a material misstatement.

  2.  The Complaint Fails to Allege any Material
     Misstatement Attributable Specifically to Mr. Hussey

The Complaint asserts that Mr. Hussey committed a primary violation of Section 10(b) of the Securities Exchange Act of 1934 (and Rule 10b-5 promulgated thereunder) and Section 17(a) of the Securities Act. In order to be liable for a primary violation of these sections, a defendant must have

NYB 1497212.5

personally made an allegedly untrue statement or material omission. With respect to Section 10(b)

and Rule 10b-5, the Second Circuit has explained that:

> a defendant must actually make a false or misleading statement in
> order to be held [primarily] liable under Section 10(b). Anything
> short of such conduct is merely aiding and abetting, and no matter
> how substantial that aid may be, it is not enough to trigger [primary]
> liability under Section 10(b).

*Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (quoting *Shapiro v. Cantor*, 123

F.3d 717, 720 (2d Cir. 1997)).[4]

The Southern District of New York has recently addressed the requisites for a primary fraud

violation in a substantially identical context, in *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F.

Supp. 2d 454 (S.D.N.Y. 2004). There the Commission brought a civil enforcement action against

Kenneth Corba, CEO of the investment adviser to PIMCO funds and also portfolio manager for two

PIMCO funds. *See id.* at 458. The complaint alleged that Corba personally negotiated and managed

market timing arrangements that were contrary to disclosures contained in the funds' prospectuses.

*See id.* at 459-62. The Commission asserted various claims seeking to hold Corba primarily liable

for material misrepresentations and omissions in connection with the funds' prospectus disclosures.

The court dismissed the Commission's claims against Corba for primary liability pursuant to Rule

12(b)(6), because Corba did not make or participate in the drafting of any of the alleged

misstatements and therefore could not be held liable under a theory of primary liability. *See id.* at

466-67 (citing *Wright*, 152 F.3d at 175).

The same result should follow here. The Complaint does not, and cannot, allege that Mr.

Hussey played any role in the preparation, drafting or signing of the prospectuses. (Compl. ¶¶ 6, 16).

---

[4]   *See also In re Lernout & Hauspie Sec. Lit.*, 230 F. Supp. 2d 152, 161-63 (D. Mass. 2002); *In re Kendall
Square Research Corp. Sec. Litig.*, 868 F. Supp. 26, 28 (D. Mass. 1994); *Wells v. Monarch Capital Corp.*,
1996 WL 728125, at *13 (D. Mass. Oct. 22, 1996); *In re Livent Inc. Noteholders Sec. Litig.*, 174 F. Supp.
2d 144, 149 (S.D.N.Y. 2001) (for primary liability to attach plaintiff must allege facts sufficient to establish
that "misrepresentations or omissions of material fact were made by or properly attributed to [the]
defendant"); *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 52 (7th Cir. 1972) (chairman of the board

As the Complaint itself makes clear, the alleged misstatements forming the basis of the Commission's fraud claims were made by the mutual funds' investment adviser — not by Mr. Hussey, or the distribution unit that employed him. (*See* Compl. ¶¶ 6, 16; "Columbia Advisors is presently the sponsor of approximately 140 Columbia Funds and remains responsible for all representations made in the prospectuses for those funds"). Moreover, the Commission cannot base liability against Mr. Hussey on a claim that Columbia Distributors had a role in distributing the prospectuses. Where, as here, the allegedly false and misleading statements are made by a corporation or other collective entity, an individual defendant may be held liable only if he or she signed the statements or was actually responsible for preparing them. *See Wright*, 152 F.3d at 175.[5] The Complaint does not allege that Mr. Hussey signed the prospectuses or played any role in their preparation. The Complaint, therefore, fails to attribute any misleading statement to Mr. Hussey. *See, e.g., SEC v. PIMCO*, 341 F. Supp. 2d at 466-67.

   3.  The Complaint Fails to Allege any
       Material Omission Attributable to Mr. Hussey

  The Complaint also fails to allege any actionable omission attributable to Mr. Hussey. Omissions violate the securities laws only if the defendant has a duty to act. A duty to disclose "does not arise from the mere possession of non-public information . . . silence absent a duty to disclose, is not misleading under Rule 10b-5." *Garvey v. Arkoosh*, 2005 WL 273135, at *6 (D. Mass. Feb. 4,

---

[5] of a company did not commit a primary violation of Section 34(b) because he did not personally sign the company's allegedly false and misleading registration statement).
 *See also In re Lernout*, 230 F. Supp. at 163 (drafting, signing, and publication of report containing misstatements sufficient for primary liability); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 331-333 (S.D.N.Y. 2004) (holding that, where a defendant "is not identified as the speaker," a complaint will only state a claim for a primary violation of Section 10(b) "where a plaintiff alleges sufficient facts that demonstrate that [the] defendant was personally responsible for making [the allegedly false and misleading] statements" because he "prepared and directed the[ir] production"); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75-76 (2d Cir. 2001).

2005).[6]  The First Circuit has identified three instances which give rise to a duty to disclose:  (1) a statute or regulation requires disclosure, (2) a corporate insider trades on confidential information, or (3) when a corporation makes incomplete or misleading disclosures.  *See*, 814 F.2d at 26-27.

The first two instances are clearly inapplicable to Mr. Hussey.  The third instance only applies to the corporation or individuals responsible for the misleading disclosure.  *See SEC v. PIMCO*, 341 F. Supp. 2d at 466-67 (mutual fund executive not primarily liable for misrepresentations also not primarily responsible for omissions); *Wright*, 152 F.3d at 175.  *See also Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 38-9 (D. Mass. 1993).  As discussed above, Mr. Hussey was not responsible for the statements made in the funds' prospectuses.  (*See supra* section II.A.2).  Mr. Hussey was under no duty, therefore, to correct those statements if they became misleading.  That responsibility belonged not to Mr. Hussey personally, but to Columbia Advisors and whomever signed or prepared the prospectuses.

    4.    The Complaint Fails to Sufficiently Allege
           that Mr. Hussey Participated in a Scheme to Defraud

To plead a scheme to defraud, the Commission must allege that the defendant engaged in a manipulative device or contrivance.  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 nn.20-21 (1976).  "Manipulation is 'virtually a term of art when used in connection with the securities markets' [and] refers generally to practices, such as wash sales, matched orders, or rigged prices that are intended to mislead investors by artificially affecting market activity."  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Hochfelder*, 425 U.S. at 199).  The scheme to defraud cause of action encompasses "the full range of ingenious devices that might be used to manipulate securities prices."  *Santa Fe*, 430 U.S. at 477.

---

[6]     *See also Chiarella v. US*, 445 U.S. 222, 235 (1980); *Roeder v. Alpha Indus. Inc.*, 814 F.2d 22, 26 (1st Cir. 1987); *Greenstone v. Cambex Corp.*, 777 F. Supp. 88, 91 (D. Mass. 1991) ("As the defendants had no duty to disclose information about their illegal business practices, they cannot be liable under Rule 10b-5"); *see also Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990); *Milton v. Van Dorn Co.*, 961 F.2d 965, 968 (1st Cir. 1992).

NYB 1497212.5

The alleged market timing arrangements are not "manipulative devices" as defined in this context, as well demonstrated in *PIMCO*. There, the Commission alleged that two mutual fund executives approved of or entered into arrangements which allegedly contradicted the funds' prospectuses. But, unlike here, the Commission also alleged that certain *PIMCO* employees disclosed insider information to select investors to facilitate their timing activities. *See PIMCO*, 341 F. Supp. 2d at 469. In its discussion of whether the Commission adequately pled a scheme to defraud, the court did not regard the timing arrangements (which included allegations of "sticky asset" requirements) as a manipulative device. *See id.* at 468-69. The court reasoned that market timing arrangements had not been prohibited by the Commission and therefore do not – standing alone – constitute a deceptive device. *See PIMCO*, 341 F. Supp. 2d at 468-69 (citing Final Market Timing Rule, 60 Fed. Reg. at 22, 301-03); *First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc.*, 164 F. Supp. 2d 383, 391 n.9 (S.D.N.Y. 2001) (practice of market timing is not illegal); *see also infra* section IV.[7] Here, the Commission has alleged no manipulative device employed by Mr. Hussey apart from his role in permitting market timing arrangements at Columbia.[8]

---

[7] The court, however, held that the selective disclosure of insider information constituted a deceptive device. *See PIMCO*, 341 F. Supp. 2d at 468-70.

[8] Nor were the market timing arrangements alleged here the sort of "sham transactions" designed to deceive the market that have been deemed "manipulative devices" in other cases in this District. For example, in *Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 173-74 (D. Mass. 2003), investors brought a securities fraud action against the owners of companies that allegedly entered into sham software licensing agreements in order to artificially inflate the companies profits. The court held that 10(b) imposed primary liability "on any person who substantially participates in a manipulative or deceptive scheme by directly or indirectly employing a manipulative or deceptive device (like the creation or financing of a sham entity) intended to mislead investors, even if a material misstatement by another person creates the nexus between the scheme and the securities market." In its holding, the court stressed the necessity of a "sham" transaction. *Id.* at 173-74 (citing *Primavera Familienstiftung v. Askin*, 1996 WL 494904, *7 (S.D.N.Y. Aug. 30, 1996)). The alleged market timing arrangements were not sham transactions. Rather, they were arrangements that permitted short-duration trading, a form of investing that had become common industry practice. The alleged arrangements, therefore, cannot be contorted into a deceptive device. *See Primavera*, 1996 WL 494904, at *7.

NYB 1497212.5

B.    **The Complaint Fails to Allege Specific Facts
        that Create a "Strong Inference" of Fraudulent Intent**

To establish scienter, a plaintiff must show either that the defendants "consciously intended to defraud" or acted with a "high degree of recklessness." *Aldridge*, 284 F.3d at 82.[9] Recklessness is defined as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Cook v. Avien, Inc.*, 573 F.2d 685, 692 (1st Cir. 1978) (quoting *Sundstrand v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977). *See also Maldonado v. Dominguez*, 137 F.3d 1, 9, n.4 (1st Cir. 1998) ("[e]ven if plaintiffs wish to prove scienter by 'recklessness,' they still must allege, with sufficient particularity, that defendants had full knowledge of the dangers of their course of action and chose not to disclose those dangers to investors"); *In re Indep. Energy*, 154 F. Supp. 2d 741, 763 (S.D.N.Y. 2001) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978)).[10] Thus it is clear that even recklessness requires some form of conscious disregard by the defendant. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999) (describing recklessness as being "apart from negligence and akin to conscious disregard").

Scienter must be pled with particularity in actions for securities fraud. *See*, 137 F.3d at 9. The First Circuit has held that the "Complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Garvey v. Arkoosh*, 2005 WL 273135 (D. Mass. 2005) (internal citations omitted). "While under Rule 12(b)(6) all inferences

---

[9]    By contrast, to establish a claim under Section 17(a)(2) or 17(a)(3) for injunctive relief, the Commission is not required to prove scienter; a showing of negligence is sufficient. *See Pagel v. SEC*, 803 F.2d 942, 946 (8th Cir. 1986) (citing *Aaron v. SEC*, 446 U.S. 680, 689-91 (1980)) ("[T]he Commission must prove scienter in actions under sections 10(b) and 17(a)(1), but … it need only prove negligence in actions under sections 17(a)(2) or (3).").

[10]    Accordingly, allegations of conduct that demonstrate "even inexcusable negligence" are insufficient. *Mfr's Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2000 WL 709006, at *3 (S.D.N.Y. June 1, 2000).

NYB 1497212.5

must be drawn in plaintiffs' favor, inferences of scienter do not survive if they are merely reasonable, as is true when pleadings for other causes of action are tested by motion to dismiss under Rule 12(b)(6).  Rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong' inferences." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-96 (1st Cir. 1999).  "The plaintiff must show that his characterization of the events and circumstances as showing scienter is highly likely." *Aldridge*, 284 F.3d at 82.  The Complaint does not come close to meeting this high burden.

Even if the statements in the prospectuses are found to be misleading, there is no specific allegation that gives rise to a strong inference that Mr. Hussey interpreted the disclosures in any way except in good faith to allow for the alleged market timing transactions in question.  For example, the Complaint alleges that Mr. Hussey drafted guidelines for market timing arrangements, which he distributed to his supervisor.  (Compl. ¶ 34).  These guidelines require Columbia Distributor to notify the investment management team early on of potential trading relationships, and to monitor the investment management teams' comfort with entering into and maintaining any relationships.  (Compl. ¶ 34).[11]  These guidelines do not evidence subterfuge or consciousness of wrongdoing.  To the contrary, these allegations suggest not only that Mr. Hussey was taking steps to control market timers, but that Mr. Hussey made widely known at the company his understanding that certain market timing arrangements were potentially appropriate where the fund management team approved of the arrangement.  The investment adviser owed a fiduciary duty to the mutual funds, and therefore it was entirely reasonable for Mr. Hussey to defer to the portfolio manager's judgment as to what

---

[11]  Recklessness "must, in fact, approximate an actual intent to aid in the fraud being perpetrated." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir.1982).

These guidelines show that Mr. Hussey was not even negligent in carrying out his job and therefore claims under sections 17(a)(2) and 17 (a)(3) should also be dismissed.  The guidelines alleged in Compl. ¶ 34 were reasonable in the context of industry standards at the time.  Because he adopted these reasonable policies and permitted short-term trading in funds only where the portfolio manager approved of it – Mr. Hussey more than satisfied the applicable standard of care and therefore was not negligent.

trading was appropriate for the funds. (Compl. ¶ 29). As discussed above, Mr. Hussey's deference also was consistent with the prospectus. *See supra* section II.A.1.

Also important, there are no allegations that Mr. Hussey ever tried to hide the market-timing arrangements. His involvement in these arrangements was open and transparent to his supervisor and other employees at Columbia. These allegations support the inference that Mr. Hussey acted in good faith, and consistent with a fair reading of the disclosure language. This is a far cry from establishing a *strong* inference that Mr. Hussey intended to deceive investors. The Commission has therefore failed to meet its high burden under *Greebel*, 194 F.3d at 195-96.[12]

C.    **The Commission Fails to Allege Fraud with the Requisite Particularity**

The Commission's claims are based on allegedly fraudulent conduct, so they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure.[13] The First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." *Greebel*, 194 F.3d at 193 (citing *Maldonado*, 137 F.3d at 9 ("This court has been especially rigorous in applying Rule 9(b) in securities fraud actions").[14] Rule 9(b) applies to claims for primary liability, *see Greebel*, 194 F.3d at 193; *SEC v. Cable/Tel Corp.*, 90 F.R.D. 662, 664 (S.D.N.Y. 1981) as well

---

[12]    Furthermore, the Complaint does not allege that Mr. Hussey even knew of the overwhelming majority of market timing transactions alleged in the Complaint. The Complaint does not allege that Mr. Hussey had knowledge of, or played any role in the transactions between the following investors and funds: Ilytat-Acorn International Select Fund (Compl. ¶¶ 42-43); Ilytat-Stein Roe International Fund (Compl. ¶ 44); Ilytat-Newport International Equity Fund (Compl. ¶ 44); Ilytat-Columbia International Equity Fund (Compl. ¶ 44); Stern-Columbia Growth & Income Fund, (Compl. ¶¶ 52-54); Stern-Columbia Select Value Fund, (Compl. ¶ 52-54); Stern-Growth Stock Fund (Compl. ¶ 52-54); Calugar-Stein Roe International Fund (Compl. ¶ 58); Giacalone-Newport Tiger Fund (Compl. ¶ 62); Signalert-Stein Roe Income Fund (Compl. ¶ 73); Signalert-Acorn Fund (Compl. ¶ 73); Signalert-Galaxy Equity Value Fund; Signalert-Galaxy Growth & Income Fund; Tandem-Tax-Exempt Fund (Compl. ¶ 76). These transactions cannot therefore form the basis of a fraud claim against Mr. Hussey.

[13]    Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. Pro. 9(b).

[14]    *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) (similar); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) ("We have been especially rigorous in demanding ... factual support in the securities context")).

14

as aiding and abetting liability under the securities laws, *see Kilmartin v. H.C. Wainwright & Co.*, 637 F.Supp. 938, 942 (D. Mass. 1986) (aiding and abetting).

As this Court recognized in *Druffner*, the plaintiffs must allege any misstatement or omission with a high degree of particularity.

> Courts in the First Circuit interpret Rule 9(b) to require that the complaint allege the time, place, and content of the alleged misrepresentations with specificity. Further, the complaint must explain why the challenged statement or omission is misleading by providing some factual support for the allegations of fraud. Thus the complaint must specify (1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent.

*Druffner*, 353 F. Supp. 2d at 148 (citations and quotation marks omitted). *See Burstein v. Applied Extrusion Techs., Inc.*, 150 F.R.D. 433, 443 (D. Mass. 1993) (plaintiffs in securities fraud case are required to specify time, place, and content of any alleged false representation).

Rather than allege particular misstatements (apart from the "Strict Prohibition" disclosure), the Commission makes allegations in generalities and by example, without identifying the particular fund or prospectus responsible for the disclosures. *See* Compl. ¶ 24 (discussing "various of the Columbia Funds"). The strict pleading requirements of Rule 9(b) are not satisfied by "exemplar" allegations. This is especially true here where Mr. Hussey is alleged to have entered into or approved market timing arrangements prior to the inclusion of the Strict Prohibition language in the prospectuses – which is the only disclosure language actually quoted in the complaint. (*See supra* section II.A.1). The Commission must quote the relevant misstatement in its entirety (rather than quoting clipped sentences) to enable the court to properly evaluate the statement in context. (Compl. ¶¶ 31, 39, 43, 47, 72) With respect to certain of the alleged transactions, the Complaint omits entirely any allegation of a particular fraudulent statement. (Compl. ¶¶ 44, 55-59, 66-67, 75). These transactions do not satisfy the strict pleading requirement under Rule 9(b) and therefore cannot form the basis of a material misstatement claim. In addition, for all of the reasons stated above in sections

NYB 1497212.5

II.A and II.B, at bare minimum the Complaint fails to plead fraud with the requisite level of particularity.

III.    **The Complaint Fails to Adequately Allege that Mr. Hussey Aided and Abetted a Predicate Violation**

Counts Three and Four of the Complaint attempt to state aiding and abetting claims against Mr. Hussey in connection with unasserted predicate violations by Columbia Advisors' of the Advisor's Act and Columbia Distributors of the Exchange Act.[15]  Both of these claims fail because the Complaint fails to allege that Mr. Hussey possessed the requisite scienter.

To establish liability for a violation of the securities laws through a theory of aiding and abetting, "[t]hree elements are thus required ...(1) that an independent wrong exists;  (2) that the aider or abettor knows of the wrong's existence;  and (3) that substantial assistance be given in effecting that wrong.'"  *Walck v. Am. Stock Exch., Inc.*, 565 F. Supp. 1051, 1064 (E.D. Pa. 1981) (quoting *Landy v. Federal Deposit Ins. Co.*, 486 F.2d 139, 163 (3d Cir. 1973); *see also Graham v. SEC*, 222 F.3d 994, 1000 (D.C. Cir. 2000); *Cleary v. Perfectune Inc.*, 700 F.2d 774, 777 (1st Cir. 1983); *SEC v. Peretz*, 317 F. Supp. 2d 58, 63 (D. Mass. 2004).  Put another way, the defendant must have "a general awareness that his role was part of an overall activity that was improper."  *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (quoting *Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir. 1980)).  "Courts generally have held that in the absence of a duty of disclosure, a defendant should be held liable as an aider and abettor only if the plaintiff proves that the defendant had *actual* knowledge of the improper activity of the primary violator and of his role in that activity."  *Peretz*, 317 F. Supp. 2d at 64 (quoting *Cleary*, 700 F.2d at 777 (emphasis added).  Recklessness will

---

[15]    Claim Three of the Complaint alleges that Mr. Hussey aided and abetted Columbia Advisor's violation of sections 206(1) and 206(2) of the Advisers Act.  Claim Four of the Complaint alleges that Mr. Hussey aided and abetted Columbia Distributor's violation of section 15(c) of the Exchange Act.  In addition to failing to plead the requisite scienter, both claims three and four are fatally flawed because they do not allege a predicate violation with the sufficient particularity required by Rule 9(b).

NYB 1497212.5

not suffice absent a fiduciary duty or a duty to disclose owed by the aider and abettor. *See id.* at 64.[16]
As discussed above, the Complaint does not allege that Mr. Hussey owed a fiduciary duty or a duty to disclose. *See supra* sections II.A.2 and II.A.3. Therefore, to plead a claim for aiding and abetting, the Complaint must allege, with particularity, that Mr. Hussey possessed actual knowledge that Columbia Advisors and/or Columbia Distributor were engaging in illegal conduct. *See* Landy *v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 163 (3d Cir. 1973). For the same reasons as discussed above, the Complaint fails in this respect.

## IV.    The Complaint Violates Due Process

The Commission has been aware of the practice of market timing in mutual funds since at least 1988. *See Windsor Sec. Inc. v. Hartford Life Ins.*, 986 F.2d 655, 666 (3d Cir. 1993) (SEC took note of concerns about market timing in 1998) (citing *Offers of Exchange Involving Registered Open-End Investment Companies and Unit Investment Trusts, Investment Company Act Rel. No. IC-16504*, 53 Fed. Reg. 30,299, 30,301, 30,307 (1988)). Yet prior to September 2003, the Commission never adopted rules or issued meaningful guidance with respect to this sort of activity. Indeed, if anything, through its actions over the years the Commission has indicated its tacit approval of market-timing practices. For example:

- In a 1991 no-action letter, the Commission authorized an investment adviser to provide clients with transaction-based "professional guidance as to timing the investment of funds through mutual fund groups"; [17]

- In another no-action letter issued in 1993, the SEC Staff provided guidance to an investment adviser in the business of "Mutual Fund Market Timing" without suggesting that the adviser's activities posed a threat to the interests of long-term mutual fund investors; [18]

---

[16]    Even where the primary violation does not require a showing of scienter, as with Section 206(2), to establish an aiding and abetting claim, the Commission must show the defendant knew of the underlying wrong. *See Decker v SEC*, 631 F.2d 1380, 1388 (10th Cir. 1980) (awareness of wrongdoing must be established to prove aiding and abetting liability even where primary violation requires "no particular state of mind").

[17]    *See Westamerica Investment Company*, SEC No-Action Letter, (Nov. 26, 1991) (providing confirmation to investment adviser providing market timing services that its activities, which included the execution of market timing trades on behalf of the adviser's clients, would not require registration under the Investment Company Act of 1940) (emphasis added).

- In a January 2000 opinion, a Commission Administrative Law Judge upheld a claim asserted by an acknowledged professional "market timer," who argued that his investment advisers should have provided him with more information on the sales charges associated with "Class B" mutual fund shares; in his decision, the Administrative Law Judge acknowledged that portfolio managers often find it difficult to manage fund relationships with market timers, but nevertheless treated "market timing" as an accepted investment strategy. [19]

Even the Commission's most recent regulations, post-dating the allegations in the Complaint, do not prohibit market timing. *See* Final Market Timing Rule, *Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings*, 17 C.F.R. §§ 239, 274 ("Final Rule"). However, the Commission now seeks to brand Mr. Hussey a fraudster and impose draconian sanctions upon him for being involved in transactions which the SEC never gave fair notice were prohibited. (Compl. ¶ 1). Moreover, the Final Rule (effective May 28, 2004) only now explicitly requires "open-end management investment companies to disclose in their prospectuses both the risks to shareholders of frequent purchases and redemptions of investment company shares, and the investment company's policies and procedures with respect to such frequent purchases and redemptions." However, in the Complaint the Commission contends that the failure to disclose market-timing arrangements from 1998 through September 2003 constituted material omissions of fact. (Compl. ¶¶ 1, 5). Thus, under the guise of 10b-5, the Commission seeks to impose standards adopted only a year ago on conduct that took place as long ago as 1998. This retroactive application of the SEC's interpretation of its own regulations violates "fair notice" principles of the due process clauses of the United States Constitution. *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).[20]

In *Upton*, the Second Circuit held that:

> Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Although the

---

[18]   *See Triad Asset Management, Inc.*, SEC No-Action Letter, (Apr. 22, 1993).

[19]   *See* In the Matter of Michael Flanagan, Ronald Kindschi, and Spectrum Administration, Inc., Admin. Proc. File No. 3-9784 (Jan. 31. 2000).

[20]   We respectfully recognize that this Court rejected this argument in *Druffner*, 353 F. Supp. 2d at 151. We urge the Court to reconsider its previous reasoning, and we preserve this issue for further review, if necessary.

NYB 1497212.5

> Commission's construction of its own regulations is entitled to "substantial deference," *Lyng v. Payne*, 476 U.S. 926, 939 (1986), we cannot defer to the Commission's interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation. *See United States v. Matthews*, 787 F.2d 38, 49 (2d Cir.1986). This principle applies, albeit less forcefully, even if the rule in question carries only civil rather than criminal penalties. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

*Upton*, 75 F.3d at 98. The court vacated the Commission's order censuring the defendant for employing a paydown device designed to evade the requirements of Rule 15c3-3(e). In vacating the order, the court reasoned that the defendant was not given fair notice because the Commission had been aware of and tolerated such paydown practices in the past. *Upton*, 75 F.3d at 98. The same is true here, and the Complaint therefore should be dismissed in its entirety with prejudice.

## V.   The Statute of Limitations Has Run for Allegations Pre-Dating February 2000

As an initial matter, the Court should not consider claims which are premised on alleged misstatements, omissions or trades which pre-date February 9, 2000. Civil enforcement actions bought by the Commission for monetary penalties are subject to the five year statute of limitations period set forth in 28 U.S.C. § 2462.[21] *See* 28 U.S.C. § 2462. *See also Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996) (action brought by Commission was a proceeding for enforcement of a "penalty" within meaning of 28 U.S.C. § 2462 and therefore proceeding had to be brought within five years from date when claim *first* accrued).[22] The Commission filed the Complaint on February 9, 2005,

---

[21]   28 U.S.C. § 2462 provides that: Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

[22]   Some courts have held that section 2462 does not apply to SEC enforcement actions brought solely for injunctive relief or disgorgement of profits. *See SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995); *SEC v. Lorin*, 869 F. Supp. 1117 (S.D.N.Y. 1994). Those courts reason that the remedies of injunctive relief and disgorgement do not constitute a "civil fine, penalty, or forfeiture, pecuniary or otherwise" and are therefore outside of the purview of section 2462. In this case, section 2462 clearly applies because the SEC is seeking civil monetary penalties. *See Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996); *SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995). *Compare with, SEC v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004) (SEC not subject to any limitations period).

NYB 1497212.5

therefore, to be timely under 28 U.S.C. § 2462, all claims must have accrued on or after February 9, 2000.

Causes of action premised on a material misstatement or omission accrue at the time of the misstatement or omission. *See Waldock ex rel. John H. Waldock Trust v. M.J. Select Global, Ltd.,* 2004 WL 2278549, at *4 (N.D. Ill. Oct. 7, 2004) ("the statute of repose is triggered for a section 10(b) and Rule 10b-5 violation when the defendant makes the misrepresentation or omission").[23] The Commission's claims are premised, in part, on misstatements and omissions of certain prospectuses alleged to be misleading which are alleged to have occurred as long ago as 1998. (Compl. ¶¶ 1, 24). This is well outside of the five year limitations period. Accordingly, allegations of securities fraud violations premised on misstatements or omissions which occurred prior to February 9, 2000 should be dismissed. (Compl. at ¶¶ 1-6, 24-25, 29, 39-40, 43, 46-47, 55-59, 66, 69-71).[24]

## CONCLUSION

Mr. Hussey also joins, to the extent applicable and not contradictory to any of the arguments herein, the brief submitted by co-defendant Mr. Tambone. For all of the reasons stated herein, we respectfully submit that the Complaint should be dismissed, in whole or in part, with prejudice.

---

[23]  *Bovee v. Coopers & Lybrand,* 216 F.R.D. 596, 604 (S.D. Ohio 2003) ("statute of limitations is triggered by the misrepresentation that constitutes the securities violation); *Wafra Leasing Corp. v. Prime Capital Corp.,* 192 F. Supp. 2d 852, 864 (N.D. Ill. 2002) ("violation for the purposes of the Rule 10b-5 statute of repose occurs when the defendant makes a misrepresentation in connection with the sale or purchase of securities"); *Antell v. Arthur Andersen LLP,* 1998 WL 245878, at *5-6 (N.D. Ill. May 4, 1998) ("three-year repose period for Section 10(b) and Rule 10b-5 claims begins to run when a defendant makes an affirmative misrepresentation"); *see also Asdar Group v. Pillsbury, Madison & Sutro,* 99 F.3d 289, 294-95 (9th Cir. 1996) (same).

[24]  For causes of action premised on a scheme to defraud, courts have held that the statute of limitations begins to run on the date of the last fraudulent misrepresentation. *See Quaak v. Dexia, S.A.,* 357 F. Supp. 2d 330, 338 (D. Mass. 2005). As discussed *supra* section II.A.4, the alleged market timing transactions do not constitute a manipulative or deceptive device and therefore the Commission does not adequately allege that Mr. Hussey participated in a scheme to defraud. As such, this is a quintessential misstatement and omission case and the statute of limitations should be applied accordingly. *See Primavera,* 1996 WL 494904, at *7 ("the Complaint is, regardless of how it is framed, one of misrepresentation").

NYB 1497212.5

Dated:  Boston, Massachusetts
        April 15, 2005

Respectfully submitted,

ROBERT HUSSEY,

By his attorneys,

____/s/  Frank A. Libby Jr._____
Frank A. Libby, Jr. (BBO # 299110)
Douglas S. Brooks (BBO # 636697)

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel.: (617) 338-9300

*Of Counsel:*

Warren L. Feldman (admitted *pro hac vice*)
David Meister (admitted *pro hac vice*)
Wesley R. Powell (admitted *pro hac vice*)
James P. Loonam (admitted *pro hac vice*)

Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 878-8000