UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,

                             Plaintiff,

    v.

JAMES TAMBONE and
ROBERT HUSSEY,

                         Defendants.

CIVIL ACTION
NO. 05-10247-NMG

## DEFENDANT ROBERT HUSSEY'S UNOPPOSED MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF <u>MOTION TO DISMISS THE COMPLAINT</u>

Pursuant to this Court's Order dated March 30, 2005, Defendant Robert Hussey ("Hussey") hereby moves to file a brief, Reply Memorandum of Law in Support of Defendant Robert Hussey's Motion to Dismiss the Complaint (the "Reply"). As grounds for this motion, Hussey states that he believes the Reply is necessary to address certain arguments – unique to him – contained in Plaintiff's Opposition to Defendants Motions to Dismiss the Complaint. Hussey further states that he believes this Reply will assist the Court in resolving the issues presented by his Motion to Dismiss and allowance of this motion will serve the interests of justice. The Reply is being served and filed herewith.

WHEREFORE, Hussey respectfully requests that the Court grant this motion.

ROBERT HUSSEY,

By his attorneys,

___/s/  Frank A. Libby Jr._____
Frank A. Libby, Jr. (BBO # 299110)
Douglas S. Brooks (BBO # 636697)

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel.: (617) 338-9300

*Of Counsel:*

Warren L. Feldman (admitted *pro hac vice*)
David Meister (admitted *pro hac vice*)
Wesley R. Powell (admitted *pro hac vice*)
James P. Loonam (admitted *pro hac vice*)

Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 878-8000

Dated:  May 31, 2005

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2), I hereby certify that I conferred with counsel for the SEC, Luke Cadigan, Esq., in a good-faith attempt to resolve or narrow the issues of this Motion, and report that plaintiffs do not oppose this motion.

___/s/ Wesley R. Powell_____
Wesley R. Powell

- 2 -

NYA 735053.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 05-10247-NMG |
| | : | |
| v. | : | |
| | : | |
| JAMES TAMBONE and | : | |
| ROBERT HUSSEY, | : | |
| Defendants. | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ROBERT HUSSEY'S MOTION TO DISMISS THE COMPLAINT**

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
(617) 338-9300

Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019
(212) 878-8000

Attorneys for Defendant Robert Hussey

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.    The Complaint Does Not Adequately Plead Primary Violations of the Securities
Laws Against Mr. Hussey............................................................................................. 2

        A.    The Complaint Fails to Attribute  a Misleading Statement to Mr. Hussey ............... 2

                1.    Communication ............................................................................................. 3

                2.    Dissemination ................................................................................................ 5

        B.    The Law Did Not Impose a Duty on Mr. Hussey to Disclose the Market
Timing Arrangements to Investors and to Impose that Duty Retrospectively
Violates Due Process.................................................................................................... 6

        C.    The Failure to Disclose Market Timing Arrangements Is Not a Scheme to
Defraud........................................................................................................................ 8

II.    Rule 9(b)'s Pleading Requirements Should Not Be Relaxed ................................. 10

III.    The Statute of Limitations Bars Claims Which Accrued Prior to February 9, 2000 ............. 12

CONCLUSION ....................................................................................................................... 14

NYB 1502024.2

# TABLE OF AUTHORITIES

## CASES

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) .................................................................................7

*Carter v. Dep't of Veterans Affairs*,
2005 WL 1155099 (S.D. Tex. May 11, 2005)....................................................13

*Durning v. Citibank, Int'l*,
990 F.2d 1133 (9th Cir. 1993) ............................................................................13

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ..............................................................................................8

*In re Everest Sec., Inc.*,
1996 WL 487682 (S.E.C. Release Aug. 26, 1996)...............................................4

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc.*,
164 F. Supp. 2d 383 (S.D.N.Y. 2001) ..................................................................9

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
94 F. Supp. 2d 491 (S.D.N.Y. 2000) ....................................................................4

*Garvey v. Arkoosh*,
354 F. Supp. 2d 73 (D. Mass. 2005)......................................................................7

*In re Global Crossing, Ltd. Sec. Litig.*,
322 F. Supp. 2d 319 (S.D.N.Y. 2004) ..................................................................5

*Greebel v. FTP Software*,
194 F.3d 185 (1st Cir. 1999) ..............................................................................10

*Greenstone v. Cambex Corp.*,
777 F. Supp. 88 (D. Mass. 1991)...........................................................................7

*In re J.F.D. Enters., Inc.*,
223 B.R. 610 (D. Mass. 1998)..............................................................................12

*Johnson v. SEC*,
87 F.3d 484 (D.C. Cir. 1996)................................................................................12

*In re Lernout & Hauspie Sec. Litig.*,
230 F. Supp. 2d 152 (D. Mass. 2002)....................................................................5

*Maldonado v. Dominguez*,
137 F.3d 1 (1st Cir. 1998) ...................................................................................10

NYB 1502024.2

*Milton v. Van Dorn Co.,*
   961 F.2d 965 (1st Cir. 1992) ...................................................................................7

*O'Brien v. DiGrazia,*
   544 F.2d 543 (1st Cir. 1976) ............................................................................. 3-4

*In re Rexplore, Inc., Sec. Litig.,*
   671 F. Supp. 679 (N.D. Cal. 1987)................................................................4, 11

*Roeder v. Alpha Indus. Inc.,*
   814 F.2d 22 (1st Cir. 1987) ......................................................................................7

*Rogan v. Menino,*
   175 F.3d 75 (1st Cir. 1999) ............................................................................... 3-4

*Romani v. Shearson Lehman Hutton,*
   929 F.2d 875 (1st Cir. 1991) ...............................................................................10

*SEC v. Druffner,*
   353 F. Supp. 2d 141 (D. Mass. 2005).......................................... 6-7, 8, 9, 10, 11

*SEC v. PIMCO Advisors Fund Mgmt. LLC,*
   341 F. Supp. 2d 454 (S.D.N.Y. 2004) ...............................................2, 3, 5, 6, 7, 9

*SEC v. Ogle,*
   2000 WL 45260 (N.D. Ill. Jan. 11, 2000)............................................................13

*SEC v. Santos,*
   355 F. Supp. 2d 917 (N.D. Ill. 2003).................................................................10

*SEC v. Williams,*
   884 F. Supp. 28 (D. Mass. 1995).........................................................................12

*SEC v. Zandford,*
   535 U.S. 813 (2002) ..............................................................................................9

*Santa Fe Indus., Inc. v. Green,*
   430 U.S. 462 (1977) ..............................................................................................9

*In re Scholastic Corp. Sec. Litig.,*
   252 F.3d 63 (2d Cir. 2001) ....................................................................................5

*Shaw v. Digital Equip. Corp.,*
   82 F.3d 1194 (1st Cir. 1996) ...............................................................................10

*Upton v. SEC,*
   75 F.3d 92 (2d Cir. 1996) ......................................................................................8

NYB 1502024.2

*Waltman v. Int'l Paper Co.*,
  875 F.2d 468 (5th Cir. 1989) ................................................................ 13

*Winkler v. NRD Mining, Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. 2000) ............................................................ 6

*Wright v. Ernst & Young, LLP*,
  152 F.3d 169 (2d Cir. 1998) ........................................................ 2, 5, 6

### STATUTES

17 C.F.R. §§ 239, 274 ............................................................................ 8

28 U.S.C. § 2462 .................................................................................. 12

NYB 1502024.2

## PRELIMINARY STATEMENT

The Securities and Exchange Commission's ("Commission's") opposition brief only confirms that this case should be dismissed in whole, or at the very least, in substantial part. The Commission advances a radically expansive interpretation of the law in its effort to retroactively regulate market timing arrangements and hold Robert Hussey liable as a "fraudster." Among other things, the Commission seeks to erode the "bright-line" distinction courts have drawn between primary and secondary liability in the securities context. This ill-conceived effort is not only an injustice to Mr. Hussey, but could result in far reaching consequences for private securities actions filed in the future. As detailed below, Mr. Hussey cannot properly be branded a primary violator.

In addition, the Commission attempts to unhinge this case from the prospectus language by repeatedly asserting that the defendants were under a general duty to disclose the market timing arrangements to investors, regardless of whether there were any misleading statements at all. In doing so, the Commission seeks to retroactively impose new regulations requiring employees of a fund distribution company to disclose any and all market timing arrangements to investors, in the funds the company distributes, regardless of what these funds' prospectuses say about short-term trading. This is a patent violation of due process. The Commission's overzealous approach to this case even leads it to suggest that the pleading standards of Rule 9(b) should be relaxed. This is wholly inappropriate in a matter where the Commission has already had the opportunity to take the testimony of at least 23 witnesses (including both defendants) and conduct voluminous document discovery. Finally, the Commission argues that it is not bound by the applicable five year statute of limitations. In short, the Commission has substantially over-reached and many, if not all, of the claims set forth in the Complaint should be dismissed.

## ARGUMENT

**I.    The Complaint Does Not Adequately Plead Primary
Violations of the Securities Laws Against Mr. Hussey**

The Commission's Opposition to Defendants' Motions to Dismiss the Complaint ("Opposition Brief") makes clear that the Complaint fails to adequately allege any primary violation of the securities laws against Mr. Hussey.

### A.    The Complaint Fails to Attribute a Misleading Statement to Mr. Hussey

The Commission argues that Mr. Hussey's "use" of prospectuses, and Columbia Distributors' dissemination of those prospectuses, amount to a material misstatement attributable to Mr. Hussey. The Commissions' argument is demonstrably incorrect.

Initially, the Commission effectively concedes that it cannot allege that Mr. Hussey played any role in the preparing, drafting or signing of the prospectuses at issue. (*See* Opp. Br. at pp. 10-11). The Complaint also does not purport to allege any misstatements to investors made apart from the prospectuses. (*See* Complaint). For these reasons alone, the primary liability claims against Mr. Hussey should be dismissed.

To adequately plead a primary violation of Section 10(b) of the Securities Exchange Act of 1934 (and Rule 10b-5 promulgated thereunder) and Section 17(a) of the Securities Act, the Commission must allege that Mr. Hussey actually made, or was primarily responsible for, a misleading statement or material omission. *See Wright v. Ernst & Young, LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("*Wright*"); *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2004) ("*PIMCO*"); *see also* (Moving Br. at pp. 7-9). "Anything short of such conduct is merely aiding and abetting[.]" *Wright*, 152 F.3d at 175.

The Commission does not contest this standard. (Opp. Br. at 10-11). Rather, the Commission attempts to massage bare bones allegations of dissemination and "use" of prospectuses into claims for primary liability. Relying on *PIMCO*, the Commission points out that the

- 2 -

"communication" of a misleading statement can give rise to primary liability under the securities laws. (*See* Opp. Brief at p. 11). The Commission contends that "the Complaint sufficiently alleges that by their communication and dissemination of the misleading prospectuses to investors, Defendants made material misrepresentations and omissions." (Opp. Br. at p. 11). The Commission's contention is wrong in several respects.

1.    Communication

Rather than supporting the Commission's position, examined carefully, the *PIMCO* decision supports dismissal of the primary claims against Mr. Hussey. In *PIMCO*, the court dismissed the primary liability claims against defendant Kenneth Corba because the "Complaint fail[ed] to assert that he had primary responsibility for development or communication of any of the misleading statements." *PIMCO*, 341 F. Supp. 2d at 467. The same reasoning applies here. The Complaint fails to allege that Mr. Hussey had <u>primary responsibility</u> for developing or communicating any of the purported misleading statements in the prospectuses. As discussed above, the Commission concedes that the Complaint fails to allege that Mr. Hussey had any responsibility (let alone primary responsibility) for developing the prospectus disclosures at issue. In addition, the Complaint fails to allege that Mr. Hussey played any role in the communication of the prospectuses. (*See* Complaint). *PIMCO*, therefore, squarely counsels this Court to dismiss the primary liability claims against Mr. Hussey. *See PIMCO*, 341 F. Supp. 2d at 467.

In its attempt to attribute the alleged misstatements to Mr. Hussey, the Commission relies on a bare bones allegation that Mr. Hussey "used" the prospectuses in offering and selling the funds to investors. (*See* Opp. Br. at p. 11, citing Complaint at ¶ 6). The Complaint does not elaborate on how Mr. Hussey "used" the prospectuses. (*See* Complaint). This scant allegation, which appears in a single clause of the Complaint, is insufficient to state a claim under Rule 12(b)(6).[1] *See Rogan v.*

---

[1]    *See also infra* section II discussing Rule 9(b). The Commission's lack of specificity as to the extent of Mr. Hussey's "use" of the prospectuses is telling. *See O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir.

*Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("bald assertions … and the like need not be credited") (quoting *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). In any event, the Commission's extraordinary position is wholly without support in the law.

To support its position that mere "use" of a prospectus amounts to a communication of a specific misstatement contained in it, the Commission inexplicably cites *In re Rexplore, Inc., Sec. Litig.*, 671 F.Supp. 679, 683 (N.D. Cal. 1987). In that case, the court held that the plaintiff sufficiently alleged a claim for securities fraud, even though the complaint did not allege that the defendants drafted the relevant offering memorandum. *See id.* at 683. However, the basis for the court's ruling starkly illustrates what is absent from the Complaint here. The court's decision in *In re Rexplore* was premised on allegations that the defendants "made oral misrepresentations, including endorsement of the [mis]statements in the [Offering] Memorandum, when answering plaintiff's inquiries[.]" *Id.* at 682. No such allegations are made against Mr. Hussey.

The Commission also mistakenly relies on the case of *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 502 (S.D.N.Y. 2000). The Commission describes that case as holding that "the defendants made misrepresentations where, *inter alia*, they gave a misleading offering memorandum to investors as part of their sales pitch." (Opp. Br. at p. 12 n.13). The "*inter alia*" is where *Gabriel Capital* diverges from this case. First, the court noted that "Plaintiffs specifically allege[d] that [defendants] directly participated in the drafting of and prepared [*sic*] the Offering Memorandum." *Id.* at 501. Second, the defendants' names actually appeared on the cover page of the Offering Memorandum at issue. *See id.* at 502. Again, no such allegations are made against Mr. Hussey.

In the face of a dearth of judicial authority supporting its radical interpretation of the law, the Commission relies on its own opinion issued in *In re Everest Sec., Inc.*, 1996 WL 487682 (S.E.C.

---

1976) ("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.")

NYB 1502024.2

Release Aug. 26, 1996).  (*See* Opp. Br. at p. 12 n.13).  That administrative proceeding concerned a review of disciplinary actions taken by the NASD against a member firm and its president.  That proceeding pre-dated the seminal case of *Wright v. Ernst & Young, LLP*, 152 F.3d 169 (2d Cir. 1998), did not address sections 10(b) or 17(a) or Rule 10b-5, and did not consider the distinction between primary and secondary liability.  In short, that case is wholly inapposite to the issue before this Court.

The Commission does not cite a single case that supports its position that the "use" of a prospectus constitutes a communication of an alleged misstatement contained therein.  We respectfully submit that better authority exists to inform the Court's consideration of this issue.  As the Commission concedes, the case of *PIMCO* involved substantially similar circumstances to this case.  (*See* Opp. Br. at p. 6 n.6).  There, the court dismissed claims of primary liability against a defendant because the complaint failed to attribute a misleading statement to him personally.  *See PIMCO*, 341 F. Supp. 2d at 466 (citing *Wright*, 152 F.3d at 175).[2]  That result should follow here as well.

### 2.    Dissemination

The Commission seeks to bolster its argument in support of its primary liability claims by asserting that Mr. Hussey disseminated the prospectuses to investors.  (*See* Opp. Br. at p. 11).  The Complaint itself alleges no such thing.  (*See* Complaint).  The Complaint does allege that Mr. Hussey's employer, Columbia Distributor, disseminated the prospectuses for the Columbia Funds. (*See* Complaint at ¶ 17).  That allegation, however, is insufficient to hold Mr. Hussey personally

---

[2]    *See also In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 331-33 (S.D.N.Y. 2004) (holding that, where a defendant "is not identified as the speaker," a complaint will only state a claim for a primary violation of Section 10(b) "where a plaintiff alleges sufficient facts that demonstrate that [the] defendant was personally responsible for making [the allegedly false and misleading] statements" because he "prepared and directed the[ir] production"); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75-76 (2d Cir. 2001) (executive responsible for investor relations personally involved in drafting, producing, reviewing and/or disseminating of the false and misleading statements); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 163 (D. Mass. 2002) (drafting, signing, and publication of report containing misstatements sufficient for primary liability).

liable for securities fraud as a primary actor. (*See* Moving Br. at p. 9). The Complaint does not allege that Mr. Hussey controlled, supervised or played any role at all in the distribution of the prospectuses. (*See* Complaint).

In any event, the allegation of dissemination is insufficient to support a claim for primary liability. Primary liability attaches only to those individuals responsible for the content of the alleged misstatements. *See Wright*, 152 F.3d at 175 ("a secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination"); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355, 366 (E.D.N.Y. 2000) (refusing to impose 10(b) liability on disseminator of misstatements attributable to another).

Because the Complaint does not allege a single misstatement attributable to Mr. Hussey, despite having had the opportunity to take the testimony of at least 23 witnesses and conduct voluminous document discovery, the Commission's primary liability claims, (*see* Complaint ¶¶ 85-89), should be dismissed with prejudice. *See PIMCO*, 341 F. Supp. 2d at 466; *Wright*, 152 F.3d 169 (2d Cir. 1998).

      B.      The Law Did Not Impose a Duty on Mr. Hussey to
Disclose the Market Timing Arrangements to Investors
<u>and to Impose that Duty Retrospectively Violates Due Process</u>

The Commission argues that Mr. Hussey was under a duty to correct the purported misstatements in the prospectuses. (Opp. Br. at pp. 8-11). However, because Mr. Hussey was not primarily responsible for drafting or communicating any of the alleged misleading statements concerning short-term trading in the Columbia Funds, he was under no duty to correct those statements. *See PIMCO*, 341 F. Supp. 2d at 466-67 (dismissing omission claim where complaint failed to attribute a misstatement to the defendant). *See also supra* at section IA.

The Commission argues, (*see* Opp. Br. at pp. 8-9), and we take no issue with, the proposition that an individual is under a duty to correct his or her own misstatements. *See, e.g., SEC v. Druffner*,

353 F. Supp.2d 141, 148 (D. Mass. 2005) ("the securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading").   There is, however, no affirmative duty imposed on an individual to correct misstatements attributable to other persons.  *See Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 81 (D. Mass. 2005) (duty to disclose "does not arise from the mere possession of non-public information"); *see also Roeder v. Alpha Indus. Inc.*, 814 F.2d 22, 26-27 (1st Cir. 1987); *Greenstone v. Cambex Corp.*, 777 F. Supp. 88, 91 (D. Mass. 1991); *Backman v. Polaroid Corp.*, 910 F.2d 10, 12-13 (1st Cir. 1990); *Milton v. Van Dorn Co.*, 961 F.2d 965, 967-68 (1st Cir. 1992).

In an attempted end-run around this well-settled limitation on Mr. Hussey's potential liability, the Commission contends that he assumed a duty to disclose the market timing arrangements to investors, because he was responsible for selling the Columbia Funds and the market timing arrangements could cause potential harm to long-term shareholders.  (*See* Opp. Br. 8-10).   In other words, the Commission asserts that Mr. Hussey owed the investors a fiduciary duty.   As a factual and legal matter, the Commission is simply incorrect.[3]

The Commission cites *PIMCO* and *Druffner* for the proposition that Mr. Hussey owed investors a duty to disclose the market timing arrangements, independent of the existence of any misstatement attributable to him.   (*See* Opp. Br. at 10).   Neither case supports the Commission's position.   Indeed, *PIMCO* makes clear that an individual owes a duty to clarify a misleading statement only if that statement is attributable to the individual.  *See PIMCO*, 341 F. Supp. 2d at 467.

---

[3]     The Complaint alleges that Columbia Advisors, however, did owe the investors a fiduciary duty and that it had "an affirmative obligation to act in utmost good faith, and to provide [investors with] full and fair disclosure of all material facts, including conflicts of interest[.]" (Complaint ¶ 7).  As alleged, Columbia Advisors was well aware of the market timing arrangements, and indeed approved of all but one of the arrangements. (Complaint ¶¶ 4, 29).  According to the Complaint, Columbia Advisors is also "responsible for all representations made in the prospectuses." (Complaint ¶ 16).  The identity of the primary alleged wrong-doer in this case is clear.  As discussed in the Moving Brief, Mr. Hussey reasonably relied on Columbia Advisors, and the lawyers and experts in its employ, to monitor and carry out its fiduciary role. (*See* Moving Br. at pp. 13-14).

NYB 1502024.2

The Commission cites *Druffner* for the proposition that "the securities laws do not require that a violation of Section 10(b) or Rule 10b-5 must involve a violation of the provisions of the prospectus of a particular fund. The plain language of those provisions proscribes fraudulent devices or statements without limiting their reach to the kinds of statements that are prohibited in a prospectus." (*See* Opp. Br. at 10 citing *Druffner*, 353 F. Supp. 2d at 149). That statement of law is undoubtedly correct, but it does not advance the Commission's position. The Complaint does not allege that Mr. Hussey employed a fraudulent device (*see infra* section IIC) or made any statements to investors (misleading or otherwise). Because Mr. Hussey owed no duty to disclose the market timing arrangements to investors, the Complaint fails to allege a cognizable material omission.

Furthermore, the Commission's position that Mr. Hussey owed a duty to disclose the market timing arrangements to investors, regardless of prospectus disclosures, is akin to imposing, retroactively, the SEC's most recent regulations addressing market timing activities. *See Final Market Timing Rule, Disclosure Regarding Market Timing and Selective Disclosure of Portfolio Holdings*, 17 C.F.R. §§ 239, 274. This is a patent violation of the due process clause and the principles set forth in *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996). (*See* Moving Br. at pp. 17-19). All claims premised on the Commission's expansive and unsupported position should further be dismissed for this additional reason.

C.    The Failure to Disclose Market Timing
      <u>Arrangements Is Not a Scheme to Defraud</u>

To plead a scheme to defraud, the Commission must allege that the defendant engaged in a manipulative device or contrivance. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 nn.20-21 (1976). As the Opposition Brief makes clear, the Complaint fails to allege any such thing.

To allege a scheme to defraud, the Commission must allege wrongful conduct apart from the purported misstatements and omissions.[4]   This is made patent by the two cases cited by the Commission as support for its position.  In *SEC v. Zandford*, 535 U.S. 813 (2002), the defendant broker-dealer engaged in wire fraud to misappropriate funds from his clients' account.  In *SEC v. Santos*, 355 F. Supp. 2d 917 (N.D. Ill. 2003), the defendants engaged in the bribery of a city treasurer to illegally secure the city's investment business.  No such independent wrong is alleged here.

*Druffner*, on the other hand, was a proper scheme to defraud case.  *Druffner*, 353 F. Supp. 2d at 148.  The defendants in that case engaged in an illegal scheme to defraud mutual fund companies by duping them into accepting trades that they otherwise would have rejected.  *See id*. at 146.  To accomplish their goal, the broker defendants employed a manipulative device by using numerous broker identification numbers and opening nearly 200 customer accounts under fictitious names.  *See id*.  That situation is wholly different from this case.  Here the Commission contends that legal market timing arrangements amount to a fraudulent scheme.

As discussed in *PIMCO*, the alleged market timing arrangements are not "manipulative devices."  *See PIMCO*, 341 F. Supp. 2d at 468-69; Moving Br. at pp. 10-11.  Market timing arrangements are not prohibited by the Commission and therefore do not – standing alone – constitute a deceptive device.  *See id*. at 468-69 (citing Final Market Timing Rule, 60 Fed. Reg. at 22, 301-03); *First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc.*, 164 F. Supp. 2d 383, 391 n.9 (S.D.N.Y. 2001) (practice of market timing is not illegal).[5]  Here, like in *PIMCO*, the Commission has failed to allege that Mr. Hussey employed a manipulative device or contrivance.

---

[4]      "Manipulation is 'virtually a term of art when used in connection with the securities markets' [and] refers generally to practices, such as wash sales, matched orders, or rigged prices that are intended to mislead investors by artificially affecting market activity."  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977) (quoting *Hochfelder*, 425 U.S. at 199).

- 9 -

NYB 1502024.2

## II.    Rule 9(b)'s Pleading Requirements
##         Should Not Be Relaxed

The Complaint against Robert Hussey stems from an investigation by the Commission of the "Fleet Complex of Mutual Funds."  In the course of that investigation, the Commission took the testimony of at least 23 witnesses (including two days of testimony from Mr. Hussey) and conducted voluminous document discovery.  After such an extensive investigation, the conduct giving rise to a securities fraud claim against Mr. Hussey, if it occurred, should be well known to the Commission. The Commission, therefore, should be able to satisfy the particularity requirements of Rule 9(b) in a clear, concise and direct way.  (*See* Opp. Br. at p. 4).

Startlingly, however, the Commission suggests that the pleading requirements of Rule 9(b) are somehow relaxed in this case.  (*See* Opp. Br. at p. 5).  That suggestion is preposterous.  The Commission incorrectly relies on this Court's decision in *Druffner*, which held that the particularity requirements of Rule 9(b) are relaxed when information giving rise to the alleged fraud is held exclusively by the defendant.  *See Druffner*, 353 F. Supp. 2d at 149 (citing *SEC v. Santos*, 292 F. Supp. 2d 1046, 1051 (N.D. Ill. 2003)).  That is simply not the case here.  The Commission has enjoyed extensive access to the documents and witnesses with information concerning the conduct at issue and therefore the Complaint must satisfy the strict and rigorous requirements of Rule 9(b) as applied by the First Circuit in securities fraud actions.  *See Greebel v. FTP Software*, 194 F.3d 185, 193 (1st Cir. 1999) (the First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions"); *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998) (same).[6]  Rule 9(b) requires the plaintiff to allege the circumstances constituting the fraud with a high

---

[5]    The court, however, held that the selective disclosure of insider information constituted a deceptive device. *See PIMCO*, 341 F. Supp. 2d at 468-70.

[6]    *See also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) (similar); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) ("We have been especially rigorous in demanding ... factual support in the securities context").

NYB 1502024.2

degree of particularity.[7]   As the Opposition Brief makes clear, the Complaint fails to meet that rigorous standard in several respects.

The Commission's claim for primary liability is premised, almost entirely, on the allegation that Mr. Hussey "used" the prospectuses in connection with selling the Columbia Funds. (*See* Opp. Br. at pp. 10-11). This allegation appears in a single clause, in the middle of a paragraph, with no elaboration. The Complaint is devoid of any allegation concerning the circumstances of Mr. Hussey's "use" of the prospectuses.[8] Those circumstances lie at the heart of the Commission's claims for primary liability, and Rule 9(b) requires that those circumstances be pled with particularity.

Furthermore, as the Commission concedes, with respect to many of the alleged transactions at issue, "the SEC has not alleged any particular fraudulent statement." (Opp. Br. at p. 8 n.10; *see* Moving Br. at 7, 15). The Commission seeks to cure this pleading defect by asserting that "in each of those discrete instances, the SEC is not alleging an affirmative misrepresentation, but a material omission." (Opp. Br. at p. 8 n.10).[9] That argument is without merit. As discussed above, (*see supra* section I), in the absence of a misleading statement attributable to him, Mr. Hussey was under no duty to disclose to investors the existence of the market timing arrangements. The Commission's

---

[7]   In *Druffner*, this Court recognized that plaintiffs must allege any misstatement or omission with a high degree of particularity.

> Courts in the First Circuit interpret Rule 9(b) to require that the complaint allege the time, place, and content of the alleged misrepresentations with specificity. Further, the complaint must explain why the challenged statement or omission is misleading by providing some factual support for the allegations of fraud. Thus the complaint must specify (1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent.

353 F. Supp. 2d at 148 (citations and quotation marks omitted).

[8]   For example, unlike in *In re Rexplore, Inc., Sec. Litig.*, 671 F. Supp. 679, 683 (N.D. Cal. 1987), the Complaint does not allege that Mr. Hussey made misleading oral statements to investors or endorsed misleading statements contained in the prospectuses in the course of his selling activities.

[9]   That assertion is far from clear from the face of the Complaint itself. At minimum, the Commission should be required to re-plead in order to make patent what it is alleging. However, in light of the Commission's extensive investigation, we respectfully submit that dismissal is a more appropriate remedy.

NYB 1502024.2

failure to allege an actionable misstatement or omission in those "discrete instances" fails to satisfy the particularity requirements of Rule 9(b).  Those transactions should be dismissed from the Complaint.[10]

### III.    The Statute of Limitations Bars Claims Which Accrued Prior to February 9, 2000

As shown in the Moving Brief, civil enforcement actions bought by the Commission are subject to the five year statute of limitations period set forth in 28 U.S.C. § 2462.[11]  *See Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996) (action brought by Commission was a proceeding for enforcement of a "penalty" within meaning of 28 U.S.C. § 2462 and therefore proceeding had to be brought within five years from date when claim *first* accrued).  At the very least, claims for monetary penalties are subject to the limitations period.  *See SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995) (distinguishing actions for equitable relief only).

The Commission attempts to avoid the applicable statute of limitations by invoking the "continuing violation" doctrine.  (*See* Opp. Br. at 20).  As an initial matter, that doctrine does not apply to securities fraud cases in this circuit.  *See In re J.F.D. Enters, Inc.*, 223 B.R. 610, 619, n.14 (D. Mass. 1998) ("[T]he First Circuit has employed the continuing tort doctrine in only two settings, employment discrimination cases and actions under 42 U.S.C. § 1983.  The Circuit has not in any manner suggested that this doctrine should be applied in other contexts").  However, even if that

---

[10]    As discussed in the Moving Brief, the Complaint also fails to allege facts which give rise to a strong inference of scienter.  (*See* Moving Br. at pp. 12-14).  The allegations suggest not only that Mr. Hussey was taking steps to control market timers, but that Mr. Hussey made widely known at the company his understanding that certain market timing arrangements were potentially appropriate where the fund management team approved of the arrangement.  The investment adviser allegedly owed a fiduciary duty to the mutual funds, and therefore it was entirely reasonable for Mr. Hussey to defer to the portfolio manager's judgment as to what trading was appropriate for the funds. (Compl. 29). The Opposition Brief only reaffirms these arguments. (*See* Opp. Br. at pp. 15-16).

[11]    28 U.S.C. § 2462 provides that: Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

NYB 1502024.2

doctrine could, as a general matter, apply to securities fraud cases, it does not apply to the facts of this case.

The continuing violation doctrine applies to offenses which "manifest themselves over time, rather than as a series of discrete acts." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). *See SEC v. Ogle*, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000). The burden is on the plaintiff to establish that the alleged conduct is a continuing violation. *Carter v. Dep't of Veterans Affairs*, 2005 WL 1155099, at *3 (S.D. Tex. May 11, 2005) ("The party who invokes equitable tolling bears the burden of proof … continuing violation doctrine as application of equitable tolling. Furthermore, the Court notes that Plaintiff's complaint contains only a series of separate and discrete acts … Therefore, Plaintiff's continuing violation argument fails"). The Commission makes no effort to meet this burden. (Opp. Br. at p. 20).

The Commission alleges that the fund prospectuses, which by definition are valid for only one year, contained misrepresentations that gave the impression the Columbia Funds were hostile to market timing, while at the same time "Defendants were negotiating, approving, or knowingly permitting short-term or excessive trading relationships." (Opp. Br. at 6). This is an allegation that each prospectus was rendered misleading, *during the time it was in force* by conduct that occurred in the same period. This describes – with respect to each challenged disclosure – a discrete set of events, not a continuing offense. *See, e.g.*, *Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136 (9th Cir. 1993) (claim accrued "when Official Statement allegedly misrepresented the bonds' redemption dates and the bonds were purchased). Accordingly, allegations of securities fraud violations premised on misstatements or omissions which occurred prior to February 9, 2000 should be dismissed. (Compl. at 1-6, 24-25, 29, 39-40, 43, 46-47, 55-59, 66, 69-71).

NYB 1502024.2

## CONCLUSION

Mr. Hussey also joins, to the extent applicable and not inconsistent with any of the arguments herein, the reply brief submitted by co-defendant Mr. Tambone.  For all of the reasons stated herein and in the Moving Brief, we respectfully submit that the Complaint should be dismissed, in whole or in part, with prejudice.

Dated:  Boston, Massachusetts
       May 31, 2005

Respectfully submitted,

ROBERT HUSSEY,

By his attorneys,


    /s/ Frank A. Libby Jr.
Frank A. Libby, Jr. (BBO # 299110)
Douglas S. Brooks (BBO # 636697)

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel.: (617) 338-9300

*Of Counsel:*

Warren L. Feldman (admitted *pro hac vice*)
David Meister (admitted *pro hac vice*)
Wesley R. Powell (admitted *pro hac vice*)
James P. Loonam (admitted *pro hac vice*)

Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
Tel.: (212) 878-8000

- 14 -

NYB 1502024.2