**United States District Court**
**District of Massachusetts**

_____
                                          )
UNITED STATES SECURITIES AND      )
EXCHANGE COMMISSION,              )
                                          )
          Plaintiff,                  )     Civil Action No.
                                          )     05-10247-NMG
          v.                              )
                                          )
JAMES TAMBONE and ROBERT HUSSEY, )
                                          )
          Defendants.                 )
_____)

MEMORANDUM & ORDER

GORTON, J.

In this case, the United States Securities and Exchange Commission ("SEC") alleges that the defendants, James Tambone ("Tambone") and Robert Hussey ("Hussey"): 1) committed fraud in violation of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 thereunder, 2) committed fraud in violation of Section 17(a) of the Securities Act of 1933, 3) aided and abetted fraud in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("the Advisers Act") and 4) aided and abetted in violation of Section 15(c) of the Exchange Act. The defendants now separately move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the SEC's complaint. Having considered the memoranda in support of and opposition to these pending motions, the Court now resolves them as follows.

I.    **Background**

In its complaint, the SEC alleges that the defendants were senior executives at Columbia Funds Distributor, Inc. ("Columbia Distributor"), a broker-dealer registered with the SEC.  Columbia Distributor served as the principal underwriter and distributor of over 140 of the mutual funds in the Columbia mutual fund complex ("the Columbia Funds").  In that capacity, Columbia Distributor disseminated prospectuses for the Columbia Funds. Tambone, Columbia Distributor's Co-President, and Hussey, Columbia Distributor's Senior Vice President and Managing Director for National Accounts, had responsibility for selling the Columbia Funds to clients and potential clients.

The SEC alleges that from as early as 1998 and continuing through September 2003, the defendants entered into, approved and knowingly permitted arrangements allowing certain preferred customers to engage in short-term or excessive trading in at least 16 different Columbia Funds.  Despite their participation in and knowledge of these arrangements and their awareness of other short-term or excessive trading by the preferred customers, the defendants allegedly offered Columbia Funds to other investors using prospectuses that represented that such trading was prohibited or indicated a hostility towards such practices. The SEC contends further that the defendants made material omissions insofar as they never disclosed those arrangements to

investors to whom they sold the Columbia Funds.

The SEC filed its complaint against the defendants on February 9, 2005.  The defendants have filed two separate motions to dismiss this case each of which is supported by a memorandum. The SEC filed a single memorandum in opposition which addresses the arguments raised by both defendants.  Because defendants' motions and memoranda contain substantially similar arguments, the Court will address them conjointly.

———————

## II.  Discussion

### A.   Standard of Review for Motions to Dismiss

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief."  Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the court must accept all factual allegations

in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>Langadinos</u> v. <u>American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  <u>See</u> <u>Nollett</u>, 83 F. Supp. 2d at 208.

   **B.   Legal Analysis**

   Each defendant argues that the complaint should be dismissed because it fails to state claims with the particularity required by Fed. R. Civ. P. 9(b).  The defendants also raise other defenses, including, among other things, failure to allege either a legally cognizable fraud claim or a claim for aider and abettor liability.

      **1.   Particularity Required by Rule 9(b)**

   As a preliminary matter, the parties to this action spill much ink arguing about the correct application of Fed. R. Civ. P. 9(b) in cases involving securities fraud claims.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The First Circuit Court of Appeals has held that Rule 9(b) requires that a complaint allege the "time, place, and content of the alleged misrepresentations with specificity." <u>Greebel</u> v. <u>FTP Software, Inc.</u>, 194 F.3d 185, 193 (1st Cir. 1999). This Court quite recently stated that in the context of fraud

-4-

claims, a complaint must specify: 1) the allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements were made and 4) how the statements were fraudulent. SEC v. Druffner, 353 F. Supp. 2d 141, 148 (D. Mass. 2005)(citing In re Allaire Corp. Sec. Litig., 224 F. Supp. 2d 319, 325 (D. Mass. 2002)).

Despite the rather straight-forward nature of the case law, the SEC has ignited a controversy by arguing that the strict command of Rule 9(b) should be relaxed in the case at bar. First, the SEC asserts that Rule 9(b) must be read alongside Fed. R. Civ. P. 8 which sets forth the general rule of pleading that a complaint contain only "a short and plain statement of the claim" and that each averment be "simple, concise and direct."  In light of Rule 8, the SEC contends, citing U.S. ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Co., 147 F. Supp. 2d 39, 46-47 (D. Mass. 2001), that Rule 9(b) does not require a claimant to set out in detail each and every fact upon which it bases its claims or to plead evidentiary matters.  Second, the SEC argues, citing Druffner, that the particularity requirement of Rule 9(b) is relaxed when information giving rise to securities fraud is exclusively held by the defendants.  See 353 F. Supp. 2d at 149.

The defendants respond that the SEC's arguments are "preposterous" and, although the description is a bit overblown, this Court, in essence, concurs.  With respect to the first of

the SEC's contentions, the First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions". <u>Greebel</u>, 194 F.3d at 193. <u>See also</u> <u>Romani</u> v. <u>Shearson Lehman Hutton</u>, 929 F.2d 875, 878 (1st Cir. 1991)("We have been especially rigorous in demanding...factual support in the securities context....").

The SEC's second contention is equally unpersuasive. Although in <u>Druffner</u> it was clear that some of the information the SEC needed was exclusively in the control of the defendants, thereby necessitating a slight relaxation of the Rule 9(b) particularity requirement, that is not the case here. During the course of this investigation, the SEC has taken the testimony of at least 23 witnesses and conducted extensive document discovery. Thus, the rule expressed in <u>Druffner</u> has no application to this case.

As such, this Court rejects the SEC's argument in favor of relaxing the strictures of Rule 9(b). It will apply the particularity requirements in the rigorous manner intended by the First Circuit Court of Appeals.

### 2. Allegation of a Legally Cognizable Fraud Claim Against the Defendants

The elements of an action for securities fraud under Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) and Section 17(a)(1) of the Securities Act are substantially the same under the Supreme Court's precedents. <u>See</u> <u>Aaron</u> v. <u>SEC</u>, 446 U.S. 680,

-6-

695 (1980); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 196
(1976).  To succeed on a claim for liability under those
provisions the SEC must show that 1) defendants engaged in
fraudulent conduct, 2) in connection with the purchase or sale of
securities, 3) through the means or instruments of transportation
or communication in interstate commerce or the mails and 4) with
the requisite scienter.  SEC v. Graystone Nash, Inc., 820 F.
Supp. 863, 870-71 (D.N.J. 1993)(citing Aaron, 446 U.S. at 695,
and Hochfelder, 425 U.S. at 196).  Defendants claim that the SEC
has failed to allege facts showing they engaged in fraudulent
conduct or acted with the requisite scienter.

To establish that a defendant engaged in "fraudulent
conduct" as defined by the securities laws, the SEC must show
that the defendant: 1) made an untrue statement of material fact,
2) omitted a fact that rendered a prior statement misleading or
3) committed a manipulative or deceptive act as part of a scheme
to defraud.  See Gross v. Summa Four, Inc., 93 F.3d 987, 992 (1st
Cir. 1996)(superseded by statute on other grounds); SEC v. Randy,
38 F. Supp. 2d 657, 668 (N.D. Ill. 1999).

### a.    Allegation of a Misstatement

The defendants' first argument is that the SEC's complaint
fails to allege that they made any misstatement at all.  This
contention is grounded in the defendants' attempt to parse the
language in the various prospectuses, most notably the so-called

"Strict Prohibition" language that appeared in prospectuses from 2001 onward, which is allegedly so ambiguous that no reasonable investor would have been misled into believing it strictly prohibited market timing.  That argument need not be addressed, however, for reasons explained below.

### b.   Attribution of a Material Misstatement to Defendants

The defendants contend that even if the language in the prospectuses was materially misleading and did, in fact, materially mislead investors, it is not attributable to them.

In order to be liable for a primary violation of Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act, a defendant must have personally made either an allegedly untrue statement or a material omission.  The Second Circuit Court of Appeals explained, in the context of Section 10(b), that

> a defendant must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger [primary] liability under Section 10(b).

Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)(quoting Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997)).

In 2004, the Southern District of New York confronted facts, similar to those in the case at bar, which represented a test of Wright.  In SEC v. PIMCO Advisors Fund Management LLC, the SEC

-8-

had brought a civil enforcement action against Kenneth Corba, CEO of the investment adviser to PIMCO funds.  The complaint alleged that Corba personally negotiated and managed market timing arrangements that were contrary to disclosures contained in the funds' prospectuses and that he was primarily liable for material misrepresentations and omissions in connection with those disclosures.  The District Court rejected that argument, concluding that Corba could not be primarily liable under <u>Wright</u> because he had not made or participated in the drafting of any of the alleged misstatements.  341 F. Supp. 2d 454, 466 (S.D.N.Y. 2004)(citing <u>Wright</u>, 152 F.3d at 175).

Taking their cue from <u>PIMCO</u>, the defendants here assert that they did not play any role in the preparation, drafting or signing of the prospectuses and, therefore, should not be primarily liable for material misstatements.  By shifting the blame, the defendants point the finger at Columbia Advisors, the entity responsible for all of the representations made in the prospectuses for the Columbia Funds.

The SEC disputes the defendants' interpretation of <u>PIMCO</u>. It argues that the case against Corba was dismissed because the complaint failed to allege that Corba personally drafted the misleading statements <u>or communicated</u> them to investors.  <u>See</u> <u>PIMCO</u>, 341 F. Supp. 2d at 467.  By contrast, the SEC's complaint in this case alleges that the defendants made material

misstatements and omissions insofar as they "used [the misleading fund prospectuses] in offering and selling the funds directly or indirectly to clients and potential clients."  The SEC emphasizes in its opposition that, by their "communication and dissemination of the misleading prospectuses to investors, Defendants made material misrepresentations and omissions."

The SEC's opposition implicitly concedes that the defendants played no role in preparing, drafting or signing the allegedly misleading prospectuses.  Thus, the alleged violation depends upon whether "use", as pled in the SEC's complaint, qualifies as "communication" or "dissemination".

Rendering the complaint more problematic is the fact that the single sentence about the defendants' "use" of the misleading fund prospectuses is the only statement in the 30-page complaint alleging any offending action on the part of the defendants.  The complaint fails to elaborate on how the defendants "used" the prospectuses and this lack of specificity raises a serious Rule 9(b) issue.  See O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)("[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.").  See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)("bald assertions...and the like need not be credited")(quoting Correa-Martinez v. Arrilaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

-10-

Beyond the complaint's Rule 9(b) particularity problems, a more troubling issue is the shaky legal foundation for the SEC's argument that use of the prospectus amounts to communication and dissemination. For example, the SEC's argument with respect to "communication" is not supported by the cases cited in its opposition.

The case that the SEC relies on principally, <u>In Re Rexplore, Inc. Securities Litigation</u>, 671 F. Supp. 679 (N.D. Cal. 1987), is not applicable to the facts alleged in the complaint. Although the District Court held that the plaintiff stated a claim for securities fraud despite the absence of an allegation that the defendants drafted the relevant offering memorandum, the case is inapposite here because the court's holding was premised on allegations that the defendants "made oral misrepresentations, including endorsement of the [mis]statements in the [Offering] Memorandum, when answering plaintiff's inquiries". <u>Id.</u> at 682. No such facts are alleged against the defendants here beyond the scant allegation about "use[]" of the prospectuses.

Other cases cited by the SEC are inapt for similar reasons. <u>See</u>, <u>e.g.</u>, <u>Gabriel Capital, L.P.</u> v. <u>NatWest Fin., Inc.</u>, 94 F. Supp. 2d 491, 502 (S.D.N.Y. 2000)(defendants were alleged to have directly participated in the drafting and preparation of the Offering Memorandum and their names appeared on the cover page of the Memorandum). Even one of the SEC's own opinions cited in its

opposition, <u>In re Everest Securities, Inc.</u>, 62 SEC Docket 1752
(Aug. 26, 1996), is unpersuasive given that the opinion 1) pre-
dated the Second Circuit's authoritative decision in <u>Wright</u> v.
<u>Ernst & Young</u>, 2) did not address Section 10(b), Rule 10b-5 or
Section 17(a) and 3) did not draw a distinction between primary
and secondary liability.

     The SEC's argument with respect to "dissemination" is
equally unavailing.  There is no evidence here that the
defendants disseminated any allegedly misleading prospectuses.
Although the complaint alleges that Columbia Distributor
disseminated the prospectuses for the Columbia Funds, that does
not implicate the defendants' personal liability for securities
fraud as primary actors.  The SEC's complaint simply alleges that
the defendants "used [the misleading fund prospectuses] in
offering and selling the funds directly or indirectly to clients
and potential clients" but does not assert that they controlled,
supervised or played any role in the distribution of the
prospectuses.

     Moreover, the SEC's claims of primary liability through
dissemination does not withstand the weight of contravening case
law.  <u>See</u> <u>Wright</u>, 152 F.3d at 175 (stating that "a secondary
actor cannot incur primary liability under the Act for a
statement not attributed to that actor at the time of its
dissemination"); <u>Winkler</u> v. <u>NRD Mining, Ltd.</u>, 198 F.R.D. 355, 366

(E.D.N.Y. 2000)(refusing to impose Section 10(b) liability on the disseminator of misstatements that were attributable to another).

In essence, the SEC has not alleged that the defendants made any untrue or misleading statement of material fact.  The SEC's complaint fails to meet the Rule 9(b) particularity requirement and its legal argument is incapable of being reconciled with PIMCO.

### c.    Attribution of a Material Omission to Defendants

Failing in its effort to demonstrate that the defendants made untrue or misleading statements indicative of fraudulent conduct, the SEC next argues that the defendants omitted facts that rendered a prior statement misleading.  The SEC quotes this Court's decision in Druffner in which it stated that

> [t]he securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading.

353 F. Supp. 2d at 148 (citing Rule 10b-5(b)).  Assuming for the moment that the prospectuses did, in fact, prohibit market timing, the SEC argues that the defendants failed to disclose market timing arrangements to investors, thereby constituting material omissions and fraudulent conduct as defined by the securities laws.

The SEC's contention hinges on the question of whether the defendants had a duty to disclose the market timing arrangements to investors given the language in the prospectuses suggesting

hostility to market timing.  The SEC asserts that

> Defendants were responsible for selling the Columbia Funds
> to investors and potential investors.  In making these
> sales, and particularly when they used the prospectuses of
> the Columbia Funds to do so, Defendants assumed a duty to
> disclose to investors the existence of the short-term or
> excessive trading arrangements.

The SEC argues that the defendants' material omissions qualify as

fraudulent conduct.

A duty to disclose "does not arise from the mere possession

of non-public information....  Silence absent a duty to disclose,

is not misleading under Rule 10b-5."  Garvey v. Arkoosh, 354 F.

Supp. 2d 73, 81 (D. Mass. 2005).  The First Circuit has

identified three situations that trigger a duty to disclose: 1)

when a corporate insider trades on confidential information, 2)

when a corporation has made inaccurate, incomplete or misleading

prior disclosures and 3) when a statute or regulation requires

disclosure.  Roeder v. Alpha Indus., Inc., 814 F.2d 22, 26-27

(1st Cir. 1987).  Only the second circumstance is in play here.

Although the SEC cites both Druffner and PIMCO in support of

its allegation that the defendants made material omissions,

neither case stands for that proposition.  Both cases make clear

that an individual owes a duty to clarify a misleading statement

only if that statement is attributable to the individual.  See

Druffner, 353 F. Supp. 2d at 148; PIMCO, 341 F. Supp. 2d at 467.

Because the defendants in the case at bar were not responsible

for the misleading disclosures in the funds' prospectuses, they

-14-

were under no duty to correct those statements if they became
misleading.  That responsibility belonged instead to Columbia
Advisors which was aware of the market timing arrangements and
was, according to the SEC's complaint, "responsible for all
representations in the prospectuses."

The SEC contends that the prospectus language is not
dispositive of the determination of whether the defendants have
made material omissions.  Citing Druffner, the SEC argues that
merely because "the arrangements may not have expressly violated
any provisions set forth in the prospectus of any individual
funds does not make the omissions any less actionable."

In Druffner, this Court concluded that:

> [T]he securities laws do not require that a violation of
> Section 10(b) or Rule 10b-5 must involve a violation of the
> provisions of the prospectus of a particular fund.  The
> plain language of those provisions proscribes fraudulent
> devices or statements without limiting their reach to the
> kinds of statements that are prohibited in a prospectus.

353 F. Supp. 2d at 149.  Nonetheless, the Druffner decision is
not helpful to the SEC's position.  The SEC has not alleged that
the defendants employed a fraudulent device (discussed infra),
nor that the defendants made any statements to investors,
misleading or otherwise.  All that the SEC has alleged is that
the defendants "used" the misleading fund prospectuses in
offering and selling the funds directly or indirectly to clients
and potential clients.  That vague statement does not satisfy the
strict particularity requirement of Rule 9(b).

-15-

####    d.    Scheme to Defraud

The SEC argues that fraudulent conduct, as defined by the securities laws, need not reach the level of misstatements or omissions to be actionable. "Section 10(b) was designed as a catch-all clause to prevent fraudulent practices." Chiarella v. United States, 445 U.S. 222, 226 (1980). As the Supreme Court has stated, a cause of action premised on a scheme to defraud encompasses "the full range of ingenious devices that might be used to manipulate securities prices." Sante Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977).

To plead a scheme to defraud, the SEC must allege that the defendants engaged in a manipulative device or contrivance. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 nn.20-21 (1976). The Supreme Court has stated that "manipulation" refers to practices such as "wash sales, matched orders, or rigged prices that are intended to mislead investors by artificially affecting market activity." Santa Fe, 430 U.S. at 476.

The SEC has failed to allege that the market timing arrangement was a scheme to defraud. The cases cited by the SEC all involved some device that was clearly illegal. See SEC v. Zandford, 535 U.S. 813 (2002)(defendant broker-dealer engaged in wire fraud to misappropriate funds from his clients' account); SEC v. Santos, 355 F. Supp. 2d 917 (N.D. Ill. 2003)(defendants engaged in the bribery of a city treasurer to secure illegally

-16-

the city's investment business); <u>Lernout & Hauspie Sec. Litig.</u>,
236 F. Supp. 2d 161, 173-74 (D. Mass. 2003)(defendants allegedly
entered into sham software licensing agreements in order to
inflate artificially the companies' profits).  This Court's
decision in <u>Druffner</u> also demonstrates the limits of the SEC's
argument because the broker defendants in that case employed a
manipulative device by using numerous broker identification
numbers and opening nearly 200 customer accounts under fictitious
names.  All of the aforementioned schemes fit into the category
of manipulative devices envisioned by the Supreme Court.  The
SEC's allegations in this case clearly do not.

       For example, the SEC argues that the defendants sold the
Columbia Funds to investors without telling them that they had
entered into, approved or knowingly allowed preferred customers
to engage in short-term or excessive trading in contravention of
prospectus disclosures.  The SEC contends that, by their conduct,
the defendants increased their sales and compensation to the
detriment of the long-term investors of the respective funds to
whom those arrangements were never disclosed.  The defect in the
SEC's allegations is that market timing arrangements are not the
kind of sham transactions which have been held to qualify as
schemes to defraud.  The court in <u>PIMCO</u> explicitly stated that
market timing, standing alone, could not constitute a fraudulent
device intended to defraud investors.  341 F. Supp. 2d at 468.

Nothing about the SEC's claim rises to the level of a scheme to
defraud under the Supreme Court's definition.

### 3.    Aiding and Abetting

Despite the SEC's failure to plead facts sufficient to save
its Section 10(b) and Section 17(a) claims from dismissal, its
claims against the defendants for aiding and abetting the
misleading disclosures remain open for consideration.
Specifically, the SEC alleges that the defendants aided and
abetted violations by Columbia Advisors of Sections 206(1) and
206(2) of the Advisers Act and Section 15(c) of the Exchange Act.

To establish aiding and abetting liability, a plaintiff must
establish: 1) a primary violation was committed, 2) the
defendants had a general awareness that their conduct was a part
of an overall activity that was improper and 3) the defendants
knowingly and substantially assisted in the primary violation.
See Druffner, 353 F. Supp. 2d at 150.

The issue of the requisite scienter for aiding and abetting
liability is an open question in this case.  In general, courts

> have held that in the absence of a duty of disclosure, a
> defendant should be held liable as an aider and abettor only
> if the plaintiff proves that the defendant had actual
> knowledge of the improper activity of the primary violator
> and of his role in that activity.

SEC v. Peretz, 317 F. Supp. 2d 58, 64 (D. Mass. 2004)(quoting
Clearly v. Perfectune, Inc., 700 F.2d, 774, 777 (1st Cir. 1983)).

With respect to knowing and substantial assistance, a

-18-

defendant's inaction or silence may qualify where the defendant recklessly violates an independent duty to act or manifests a conscious intention to further the principal violation. <u>Austin</u> v. <u>Bradley, Barry & Tarlow, P.C.</u>, 836 F. Supp. 36, 39 (D. Mass. 1993). This Court has already found that the defendants were not under a duty to disclose the market timing arrangements to investors. Thus, in order to plead a claim for aiding and abetting, the SEC's complaint must allege, with particularity, that the defendants' silence or inaction was consciously intended to further the principal violation.

In determining whether silence or inaction was accompanied by conscious intent to assist the primary violation, courts must determine whether the defendant threw "in his lot with the primary violators" and "benefitted" from the alleged silence. <u>Austin</u>, 836 F. Supp. at 39-40. Courts have been "particularly exacting" in making these determinations and "economic motivation alone is too remote and minimal" to demonstrate conscious intent. <u>Id.</u> at 40.

The defendants assert that the SEC's complaint fails to make the case that the defendants meet the legal standard for aiding and abetting and this Court agrees. The SEC has not pled with the requisite degree of particularity that the defendants had "actual knowledge" of the improper activity of the primary violators or of their roles in that activity. Moreover, the

-19-

SEC's complaint has not demonstrated that the defendants possessed the "conscious intent" necessary for their inaction to qualify as knowing and substantial assistance.

The SEC has made no allegation to suggest that the defendants consciously threw in their lot with the primary violators.  Furthermore, its key argument that the defendants benefitted from the market timing arrangements through the collection of fees that flowed from those transactions is insufficient given the <u>Austin</u> decision which held that economic motivation alone is too remote and minimal to demonstrate conscious intent.  The SEC has, once again, offered this Court too little to withstand the defendants' motions to dismiss.

### ORDER

In accordance with the foregoing, Defendants' Motions to Dismiss (Docket Nos. 7 and 9) are **ALLOWED**.  This case is **DISMISSED WITHOUT PREJUDICE**.

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge
Dated January 27, 2006

-20-