UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

JAMES TAMBONE and
ROBERT HUSSEY,

      Defendants.

**Civil Action No.:  05-10247 NMG**

**[CASE CLOSED]**

## FORMER DEFENDANT JAMES TAMBONE'S OPPOSITION TO THE SECURITY AND EXCHANGE COMMISSION'S "MOTION FOR RELIEF FROM JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60(b)"

### I.    INTRODUCTION

This case is closed.  The Securities and Exchange Commission ("SEC" or "Commission") seeks to reopen it because the Commission allegedly "has not had the opportunity to amend its complaint[.]"  That is *not* true.  The Commission had over *nine months* to amend its complaint, *as a matter of right*, yet it inexplicably chose not to do so.  The Commission ignores that fact and simply refuses to explain the reason why it carelessly sat on its rights for so long despite being aware of the pleading deficiencies in its complaint.  Furthermore, the Commission simply refuses to acknowledge its neglect or demonstrate why it somehow is excusable.

The Commission also disregards First Circuit case law counseling the Commission from filing and arguing its motion to amend without first obtaining post-judgment relief.  The Commission's motion to vacate is nothing more than a continuation of its improperly filed motion to amend.  Nowhere in its supporting papers does the Commission cite to or analyze the

legal standards governing the relief it seeks under Rule 60(b). The Commission proffers no facts - not even one - that would entitle it to post-judgment relief. Accordingly, the Court must deny the Commission's motion.[1]

## II.    RELEVANT FACTS

The Commission filed its complaint in this closed case on February 29, 2005. Exhibit A (a copy of the Court's Docket), Entry No. 1 ("Complaint"). Former defendants James Tambone ("Mr. Tambone") and Robert Hussey ("Mr. Hussey") filed separate motions to dismiss on April 15, 2005. Id., Entry Nos. 7 and 9. Neither former defendant answered the Complaint. See generally, id. In a Memorandum and Order, the Court "ALLOWED" the motions to dismiss on January 27, 2006, and the case was "DISMISSED WITHOUT PREJUDICE." Id., Entry No. 15 ("Final Judgment"); Exhibit B (a copy of the Memorandum and Order).[2] The same day, the Court also entered a separate "Order of Dismissal" on the Docket and "CLOSED" the case. Exhibit A, Entry No. 16.

On March 13, 2006, the Commission filed a "Motion for Leave to File an Amended Complaint" and a proposed amended complaint. Exhibit A, Entry Nos. 17 ("Motion to Amend") and 18 ("Proposed Amended Complaint"). On March 16, 2006, the former defendants informed the Court (by letter) that the Commission improperly filed the Motion to Amend because there was no complaint pending to amend as a result of the Final Judgment. Id., Entry No. 20; Exhibit C (a copy of former defendants' letter). The Commission then filed a "Motion for Relief from Judgment or Order Pursuant to Fed. R. Civ. P 60(b)." ("Motion to Vacate").

---

[1] Denying the motion does temper the Court's decision to dismiss this case "without prejudice." In addition, even if the Commission were allowed to file the proposed amended complaint, it too will be dismissed because it will not assert any meritorious claims.

[2] The Final Judgment was immediately appealable. FED. R. APP. P. 4. The Commission chose not to file a notice of appeal.

### III.    DISCUSSION

**A.    THE COMMISSION MAY NOT FILE AND ARGUE ITS MOTION TO AMEND WITHOUT FIRST OBTAINING POST-JUDGMENT RELIEF**

The Commission's Motion to Vacate clearly is nothing more than further briefing in support of the improvidently filed Motion to Dismiss. For example, the Commission fails to identify the actual Rule 60(b) subsection under which it seeks relief. See SEC Mot. p. 1 ("Pursuant to Fed. R. Civ. P. 60(b)"); SEC Mem. p. 1 ("Fed R. Civ. P. 60(b) provides, . . ."). The only citation to an actual Rule 60(b) subsection is a stray *misquoted* reference to the language of Rule 60(b)(6). SEC Mem. p. 3; see infra n.6. Likewise, the Commission refuses to provide, cite to, or even discuss any standards governing post-judgment relief under Rule 60(b), let alone analyze whether the underlying circumstances warrant that relief. Indeed, the Commission does not even describe or explain the true circumstances causing its need to seek such extraordinary post-judgment relief.

Rather, the Commission enigmatically relies on the liberal standards and case law under Rule 15(a), governing motions to amend. See SEC Mem. pp. 3-6.[3]  Whether leave to amend should be "freely given" has no bearing whatsoever on the Court's Rule 60(b) analysis. See infra Discussion, Section B. This case has been closed and, as explained in detail in the defendants' letter to the Court, the Commission may not file and argue its Motion to Amend without first obtaining relief under Rule 60(b). See Exhibit C. Through its Motion to Vacate,

---

[3] The cases cited by the Commission do not support any claim for relief under 60(b). The cases fail to cite Rule 60(b) or analyze any standards governing post-judgment relief under Rule 60(b). See Gaffney v. Silk, 488 F.2d 1248 (1st Cir. 1973); FDIC v. Consolidated Mortgage and Finance Corp., 805 F,2d 14 (1st 1986); Eastern Food Srvs, Inc. v. Pontifical Catholic Univ. Srvs. Ass'n, Inc., 357 F.3d 1 (1st Cir. 2004); Acito v. Imcera Group, Inc., 47F. 3d 47 (2nd Cir. 1995); Emerito Estrada Rivera-Isuzu de P.R. v. Consumers Union of United States, 233 F.3d 24 (1st Cir. 2000); Royal Bus. Group, Inc. v. Realist, Inc., 933 F.2d 1056 (1st Cir. 1991) (cited in order of appearance in SEC Mem.).

however, the Commission transparently seeks to side-step that process and controlling First Circuit precedent. The Court should not allow the Commission to do so.

## B.  THE CIRCUMSTANCES DO NOT WARRANT ANY POST-JUDGMENT RELIEF UNDER RULE 60(b)[4]

Despite the Commission's failure to articulate which Rule 60(b) subsection should afford relief, there is only one subsection that possibly could apply here - subsection (b)(1). Considering the Commission's misquoted reference to the language in subsection (b)(6), however, Mr. Tambone addresses both (b)(1) and (b)(6) below. Neither subsection, however, affords the Commission any relief because the Commission's carelessness is not excusable under (b)(1) and (b)(6) simply does not apply to situations where the movant bears any fault. Accordingly, the Court should deny the Commission's Motion to Vacate.

### 1.    The Commission's Neglect is Far from Excusable

The Commission ignores the real reason for its need to seek post-judgment relief -- its own careless choice not to file an amended complaint when it had the absolute right to do so. As expressly provided by Rule 15(a), the Commission could have filed an amended complaint as a matter of right during the nine months between the defendants' filings of their separate motions to dismiss and the entry of the Final Judgment. See FED. R. CIV. P. 15(a) (a party may amend its pleading as a matter of right "at any time before a responsive pleading is served. . . .").[5] The Commission chose not to exercise that right. Yet, the Commission never explains why it made

---

[4] To the extent the Commission's Motion to Vacate can be read to seek to alter or amend the Final Judgment, the Commission's request is untimely. See FED. R. CIV. P. 59(e) (requiring motion to alter or amend judgment to be filed within 10 days after entry of the judgment); see also, Memorandum of Law in Support of Robert Hussey's Opposition to the Commission's Motion for Relief from Judgment Pursuant to FED. R. CIV. P. 60(b), which is incorporated by reference herein in its entirety to the extent it presents consistent argument with Mr. Tambone's opposition to the Motion to Vacate.

[5] It is axiomatic that a motion to dismiss is not a responsive pleading. See e.g., Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 22 (1st Cir. 1989); McDonald v. Hall, 579 F.2d 120,121 (1st Cir. 1978).

that choice.  Nowhere in its moving papers does the Commission provide any reason for its carelessness.  The Commission refuses even to broach the subject, perhaps hoping that it will not have to do so.  The Commission cannot get away so easily because the Court must find the Commission's carelessness *excusable* to grant any post-judgment relief.

Rule 60(b)(1) affords a party post-judgment relief if a party's acts or omissions are based on "excusable neglect."  FED. R. CIV. P. 60(b)(1).  The excusable neglect standard is equitable and should be based on all relevant circumstances.  See Deo-Agbasi v. Parthenon Group, 229 F.R.D. 348, 351-52 (D. Mass. 2005).  Relevant factors include:

> The danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, <u>the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith</u>.

See Davila-Alvarez, 257 F.3d at 64 (*quoting* Pioneer Inv. Srvs. Co. v. Brunswick Assoc's Ltd. Partnership, 507 U.S. 380 (1993)) (emphasis added); Deo-Agbasi, 229 F.R.D. at 352.  The relevant factors are not equally weighted and, in particular, the "reason-for-delay factor will <u>always</u> be critical to the inquiry. . . ."  See Hospital del Maestro v. National Labor Relations Bd., 263 F.3d 173, 175 (1st Cir. 2001) (emphasis added); Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001).  The standard is demanding in the First Circuit.[6]  See Deo-Agbasi, 229 F.R.D. at 352.  Prejudice against the non-moving party is not required.  See Dimmitt v. Ockenfels, 407 F. 3d 21, 25 (1st Cir. 2005).

The excusable neglect standard normally <u>precludes</u> relief based on counsel's inadvertence, ignorance of the rules, inattention, carelessness, and failure to consult or abide by

---

[6] Prior to 1993, the excusable neglect standard in the First Circuit required "unique and extraordinary circumstances."  See Graphic Communications Int'l Union, Local 12-N, 270 F.3d at 4 (discussing standard under the Rule of Appellate Procedure 4(a)(5)).  In 1993, Supreme Court of the United States endorsed "a more generous reading" of the standard in Pioneer when interpreting a cognate standard under the Bankruptcy Rules.  See id.  The relevant factors set forth above arise from Pioneer  See id.  Although the Pioneer standard is more forgiving than that in pre-1993 cases from the First Circuit, the movant still must proffer a satisfactory reason for its inadvertence.  See id.

an unambiguous procedural rule. See Dimmit, 407 F.3d at 24; Deo-Agbasi, 229 F.R.D. at 352.[7]

As aptly stated by the First Circuit:

> A misunderstanding that occurs because a party (or his counsel) elects to read the clear, unambiguous [rules] . . . through rose-colored glasses cannot constitute excusable neglect.

See Hospital del Maestro, 263 F.3d at 175 (quoting Mirpuri v. ACT Manufacturing, Inc., 212

F.3d 624, 631 (1st Cir. 2000)); see also, Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993)

(each party has "an abiding duty to take the legal steps necessary to protect his or her own

interests" and failure to do so does not constitute excusable neglect). This well-settled case law

is fatal to the Commission's Motion to Vacate because that is exactly what happened here.

Although the Commission refuses to admit its own carelessness or provide any reasons

therefore, the Commission unquestionably is before the Court seeking post-judgment relief

because:

1. The Commission ignored or misunderstood its ability to file an amended complaint under Rule 15(a) as a matter of right for over nine months;

2. The Commission ignored or misunderstood that the complaint truly had pleading deficiencies warranting dismissal despite clear case law to the contrary;

3. The Commission ignored or misunderstood controlling First Circuit law making the Court's dismissal without prejudice a final judgment;

4. The Commission ignored or misunderstood that the case was CLOSED on the Court's Docket;

5. The Commission ignored or misunderstood that a party may not file a motion to amend to reopen a closed case, especially when that motion failed to request any post-judgment relief;

6. The Commission misunderstands the proper scope and language of Rule 60(b)(6);

---

[7] Cf. Advanced Estimating System, Inc. v. Riney, 130 F.3d 996, 997 (11th Cir. 1997) ("as a matter of law, a lawyer's failure to understand clear law cannot constitute excusable neglect"); Midwest Employers Cas. Co. v. Williams, 161 F.3d 877, 880 (5th Cir. 1998) (it would be a "rare case indeed" in which "interpretations of the federal rules could constitute excusable neglect").

7.    The Commission misunderstands or ignores case law and standards underlying Rule 60(b)(1) and 60(b)(6); and

8.    The Commission misunderstands its burden to proffer sufficient facts, analysis, and argument to support its extraordinary request for post-judgment relief.

The Commission's inadvertence, carelessness, or ignorance is no excuse for failing to protect its rights during the underlying litigation.   The quandary in which the Commission now finds itself is one of its own making.   The circumstances before the Court actually present a road-map for how *not* to respond to a motion to dismiss and subsequent dismissal without prejudice.   Accordingly, Rule 60(b)(1) does not afford any relief under those circumstances.

2.    **Rule 60(b)(6) Does Not Apply**

Rule 60(b)(6) does not provide a safe harbor for the Commission.   The subsection merely is a general catch-all provision allowing post-judgment relief <u>only</u> when the first five subsections do not apply.[8]   <u>See</u> <u>Claremont Flock Corp. v. Alm</u>, 281 F.3d 297, 299 (1st Cir. 2002); <u>United States v. Baus</u>, 834 F.2d 1114, 1121 (1st Cir. 1987).   As set forth above, the Commission really seeks relief based on its utter carelessness, which *irrefutably* is a Rule 60(b)(1) issue.   <u>See</u> <u>Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe</u>, 257 F.3d 58, 67 (1st Cir. 2001) (unless a movant is "faultless," (b)(6) relief simply is unavailable and the movant must seek relief under (b)(1) and prove its neglect is excusable) (*quoting* <u>Pioneer Inv. Servs. Co.</u>, 597 U.S. at 393); <u>Pramco, LLC v. Mujica</u>, 389 F. Supp. 2d 151, 159 (D. Puerto Rico 2005) (Rule 60(b)(6) "is not for the purpose of relieving a party from the free, calculated, and deliberate

---

[8] The Commission misquotes the Rule 60(b)(6) by omitting the word "other" and mischaracterizing the scope of the rule as providing relief "for . . . any . . . reason" as opposed to "any *other* reason" than those covered by (b)(1) through (b)(5).   <u>Compare</u> SEC Mem. p. 3 <u>with</u> Fed. R. Civ. P. 60(b)(6) (emphasis added).

choices" it has made and where a party fails to abide by its legal duty to protect its interests).

Under no set of circumstances could the Commission be deemed faultless here.  Therefore,

60(b)(6) cannot apply as a matter of construction.[9]

### 3.    The Proposed Amended Complaint Does Not Contain Meritorious Claims

Even if the Commission could conjure appropriate facts and reasons to support relief

under Rule 60(b)(1) or (b)(6), the Court should deny the Motion to Vacate because granting it

will be a waste of time and resources.  Rule 60(b) relief is not appropriate unless the movant

makes a "suitable showing" of a meritorious claim.  See Cotto, 993 F.2d at 280; Teamsters,

Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc., 953

F.2d 17, 21 (1st Cir. 1992); Capizzi, 2005 WL, at * 8.  The Commission has made no such

showing.

All the Commission states in its moving papers is that the Proposed Amended Complaint

"addresses the concerns" raised in the Court's Memorandum and Order.  SEC Mem., p. 4.  It

assuredly does not.  Rather, the Proposed Amended Complaint still fails to plead fraud with

particularity under FED. R. CIV. P. 9(b).  As the Court explained in its Memorandum and Order,

Rule 9(b) requires that a complaint allege the "time, place, and content of the alleged

misrepresentations with specificity."  Exhibit B at p. 4.  Further, a complaint alleging fraud must

---

[9] Even if 60(b)(6) did apply, the Commission fails to satisfy the rule's lofty standards.  In the First Circuit, a movant "must show extraordinary circumstances" to justify (b)(6) relief.  See Claremont Flock Corp., 281 F.3d at 299 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assoc., 597 U.S. 380, 393 (1993)).  Given the Court's interest in the finality of judgments, those circumstances must be truly "exceptional" to warrant (b)(6) relief.  See Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001).  The Commission fails to even mention, let alone analyze, those governing standards.  Considering that the operative question is whether the Commission's neglect is excusable or not, any neglect at all would preclude relief under Rule 60(b)(6) in the First Circuit.  See Davila-Alvarez, 257 F.3d at 63-64; Pramco, LLC, 389 F. Supp. 2d at 159.  Consequently, the Commission cannot satisfy Rule 60(b)(6).

specify: "1) the allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements were made and 4) how the statements were fraudulent." Id. at pp. 4-5.

Despite the clear standards provided by the Court, the Commission merely added general allegations in the Proposed Amended Complaint that Mr. Tambone allegedly signed "hundreds" of selling agreements (as Chief Executive Officer of Liberty Distributor) between Liberty Distributor and various broker-dealers, through which Mr. Tambone "expressly represented and warranted" that (1) "the Prospectus of each Fund and all sales literature we [Liberty Distributor] issue for distribution will comply with all applicable state and Federal laws, rules and regulations" and (2) "each Prospectus and all sales literature we [Liberty Distributor] issue will not by statement or omission be misleading[.]" See Prop. Amd. Compl. ¶3, 31-34. Even assuming that Mr. Tambone made those statements in his personal capacity, *which he did not*, the allegations do not satisfy the First Circuit's strict and rigorous pleading standard. Exhibit B, at pp. 5-6. The Commission does not specify when the statements were made, whether the statements related to funds through which there was market timing or language prohibiting that practice, or how the statements were fraudulent.

Nor would Mr. Tambone's signature on the unidentified Selling Agreements alone trigger primarily liability because the alleged misrepresentations within those agreements arise wholly from the Commission's complaints about the fund prospectuses. The Commission still fails to allege that Mr. Tambone played any role in preparing, drafting or signing the allegedly misleading prospectuses or otherwise elaborate how Mr. Tambone "used" the prospectuses (or Selling Agreements) or that Mr. Tambone personally disseminated or personally communicated any misleading information to any investor in the prospectuses (or Selling Agreements).[10]

---

[10] Moreover, the Proposed Amended Complaint does not sufficiently address the Commission's failure to allege that Mr. Tambone had a duty to speak or somehow employed a fraudulent device. Similarly, the pleading does not

Rather, the Commission merely alleges that "on information and belief," Mr. Tambone "reviewed and provided input into the market timing language that was incorporated into certain of the prospectus" and "communicated their comments on these representations to in-house counsel for Columbia Advisors" without more. See Prop. Amd. Compl. ¶¶ 8 and 28. The Commission's "on information and belief" averments, however, do not satisfy Rule 9(b) pleading requirements because, in particular, they fail to identify what language and in which prospectuses Mr. Tambone allegedly "reviewed and provided input" and, further, what input he provided and whether it was misleading or not.[11]  As a result, the Commission has not made a suitable showing that it has any meritorious claims against Mr. Tambone, which precludes relief under any Rule 60(b) subsection.

### 4.    Granting the Requested Relief will Unfairly Prejudice Mr. Tambone

Despite having well over two years to uncover facts to support meritorious claims against Mr. Tambone, the Commission has failed to do so.  During that time, the Commission subpoenaed tens of thousands of pages of documents and interviewed dozens of witnesses. Despite that, the Commission carelessly litigated this case from the beginning and offers no excuses for its conduct.  At the same time, Mr. Tambone has lived under a cloud of impropriety and suffered severe career consequences.  Allowing the Commission additional time to find meritorious claims against Mr. Tambone - where there are none - is exactly the type of unfair prejudice that Rule 60(b) does not permit.  See Teamsters Union, Local No. 59, 953 F.2d at 19-

---

bolster, with particularity, the Commission's allegations that Mr. Tambone's silence somehow was consciously intended to further any primary violations of the corporate defendants or that Mr. Tambone had "actual knowledge" of the their improper activity.  Therefore, the Commission's aiding and abetting claims suffer from the same deficiencies contained in the original complaint.

[11] See United States v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 and n.8 (1st Cir. 2004) (information and belief averments subject to 9(b) particularity requirements and must set forth the facts on which the belief is founded); Garby v. Arkoosh, 354 F. Supp. 2d 73, 80 (D. Mass. 2005) (requiring a party to "set forth the source of the information and the reasons for the belief" to satisfy 9(b)).

20 (noting that courts will not disturb judgments pursuant to rule 60(b) unless movant can demonstrate absence of unfair prejudice to opposing party).

## IV.    CONCLUSION

Based on the foregoing reasons, the Court should deny the Motion to Vacate in its entirety.

Respectfully submitted,

JAMES TAMBONE,
By his attorneys,

/s/ David G. Thomas
A. John Pappalardo (BBO #388760)
John A. Sten (BBO #629577)
David G. Thomas (BBO# 640854)
Salo L. Zelermyer (BBO# 661228)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA  02110
(617) 310-6000

Dated:  April 4, 2006

bos-fs1\THOMASDA\186152v05

11

# EXHIBIT A

CLOSED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:05-cv-10247-NMG

Securities & Exchange Commission v. Tambone et al
Assigned to: Judge Nathaniel M. Gorton
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 02/09/2005
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Securities & Exchange Commission**

represented by **Celia Moore**
U.S. Securities & Exchange
Commission
73 Tremont St.
6th Floor
Boston, MA 02108-0210
617-573-8976
Fax: 617-424-5940
Email: moorece@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. London**
Securities and Exchange Commission -
MA
33 Arch Street
23rd Floor
Boston, MA 02110-1424
617-573-8997
Fax: 617-424-5940
Email: londond@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Luke T. Cadigan**
U.S. Securities and Exchange
Commission
Boston Distict Office
73 Tremont Street
Suite 600
Boston, MA 02108
617-573-8919
Fax: 617-424-5940
Email: cadiganl@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**James Tambone**                          represented by  **David G. Thomas**
                                                         Greenberg Traurig, LLP
                                                         One International Place
                                                         Boston, MA 02110
                                                         617-310-6000
                                                         Fax: 617-310-6001
                                                         Email: thomasda@gtlaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Hussey**                          represented by  **David Meister**
                                                         Clifford Chance US LLP
                                                         31 West 52nd Street
                                                         New York, NY 10019
                                                         212-878-3092
                                                         Fax: 212-878-8375
                                                         Email:
                                                         david.meister@cliffordchance.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Douglas S. Brooks**
                                                         Kelly, Libby & Hoopes, PC
                                                         175 Federal Street
                                                         Boston, MA 02110
                                                         617-338-9300
                                                         Fax: 617-338-9911
                                                         Email: dbrooks@klhboston.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Frank A. Libby, Jr.**
                                                         Kelly, Libby & Hoopes, PC
                                                         175 Federal Street
                                                         Boston, MA 02110
                                                         617-338-9300
                                                         Fax: 617-338-9911
                                                         Email: falibby@klhboston.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **James P. Loonam**
                                                         Clifford Chance US LLP
                                                         31 West 52nd Street
                                                         New York, NY 10019

212-878-3092
Fax: 212-878-8375
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John S. Marco**
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle E. Williams**
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
212-878-3092
Email:
michelle.williams@cliffordchance.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Warren L. Feldman**
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
212-878-3092
Fax: 212-878-8375
Email:
warren.feldman@cliffordchance.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley R. Powell**
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
212-878-3092
Fax: 212-878-8375
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/09/2005 | 1 | COMPLAINT against James Tambone, Robert Hussey Filing fee: , filed by Securities & Exchange Commission. (Attachments: # 1 Complaint Part 2# 2 Civil Cover Sheet)(Barrette, Mark) (Entered: 02/10/2005) |
| 02/09/2005 |   | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge |

| | | |
|---|---|---|
| | | Bowler. (Barrette, Mark) (Entered: 02/10/2005) |
| 02/09/2005 | | Summons Issued as to James Tambone, Robert Hussey. (Barrette, Mark) (Entered: 02/10/2005) |
| 02/28/2005 | 2 | NOTICE of Appearance by Frank A. Libby, Jr on behalf of Robert Hussey (Libby, Frank) (Entered: 02/28/2005) |
| 02/28/2005 | 3 | MOTION for Extension of Time to April 8, 2005 to File Response/Reply by Robert Hussey. (Attachments: # 1 Text of Proposed Order # 2 Text of Proposed Order)(Libby, Frank) (Entered: 02/28/2005) |
| 03/11/2005 | 4 | NOTICE of Appearance by Douglas S. Brooks on behalf of Robert Hussey (Brooks, Douglas) (Entered: 03/11/2005) |
| 03/11/2005 | 5 | Assented to MOTION for Leave to Appear Pro Hac Vice by David Meister; Warren L. Feldman; Wesley R. Powell; James P. Loonam; John S. Marco by Robert Hussey. (Attachments: # 1)(Brooks, Douglas) (Entered: 03/11/2005) |
| 03/14/2005 | | Filing fee: $ 250.00, receipt number 62733 regarding Pro Hac Vice (Barrette, Mark) (Entered: 03/15/2005) |
| 03/30/2005 | 6 | Assented to MOTION for Extension of Time to 4/15/05 to serve responsive pleadings or motions by Securities & Exchange Commission. (Cadigan, Luke) (Entered: 03/30/2005) |
| 04/04/2005 | | Judge Nathaniel M. Gorton : Electronic ORDER entered granting 3 Motion for Extension of Time to File Response/Reply, granting 5 Motion for Leave to Appear Pro Hac Vice Added David Meister for Robert Hussey, Warren L. Feldman for Robert Hussey, Wesley R. Powell for Robert Hussey, Patrick P. Loonam for Robert Hussey, John S. Marco for Robert Hussey, granting 6 Motion for Extension of Time (Nicewicz, Craig) (Entered: 04/04/2005) |
| 04/15/2005 | 7 | MOTION to Dismiss by James Tambone.(Thomas, David) (Entered: 04/15/2005) |
| 04/15/2005 | 8 | MEMORANDUM in Support re 7 MOTION to Dismiss filed by James Tambone. (Thomas, David) (Entered: 04/15/2005) |
| 04/15/2005 | 9 | MOTION to Dismiss by Robert Hussey.(Brooks, Douglas) (Entered: 04/15/2005) |
| 04/15/2005 | 10 | MEMORANDUM in Support re 9 MOTION to Dismiss filed by Robert Hussey. (Brooks, Douglas) (Entered: 04/15/2005) |
| 05/16/2005 | 11 | Opposition re 7 MOTION to Dismiss, 9 MOTION to Dismiss filed by Securities & Exchange Commission. (Cadigan, Luke) (Entered: 05/16/2005) |
| 05/31/2005 | 12 | MEMORANDUM in Support re 7 MOTION to Dismiss filed by James Tambone. (Thomas, David) (Entered: 05/31/2005) |
| 05/31/2005 | 13 | MOTION for Leave to File *Reply Memorandum in Support of Motion to* |

| | | *Dismiss* by Robert Hussey. (Attachments: # 1)(Brooks, Douglas) (Entered: 05/31/2005) |
|---|---|---|
| 07/13/2005 | | Judge Nathaniel M. Gorton : Electronic ORDER entered granting 13 Motion for Leave to File (Nicewicz, Craig) (Entered: 07/13/2005) |
| 07/19/2005 | 14 | MOTION for Leave to Appear Pro Hac Vice by Michelle E. Williams by Robert Hussey.(Libby, Frank) (Entered: 07/19/2005) |
| 07/19/2005 | | Filing fee: $ 50, receipt number 65672 regarding Pro Hac Vice for Michelle E Williams (Elefther, Elizabeth) (Entered: 07/20/2005) |
| 07/20/2005 | | Judge Nathaniel M. Gorton : Electronic ORDER entered granting 14 Motion for Leave to Appear Pro Hac Vice Added Michelle E Williams for Robert Hussey (Elefther, Elizabeth) (Entered: 07/20/2005) |
| 01/27/2006 | 15 | Judge Nathaniel M. Gorton : ORDER entered. MEMORANDUM AND ORDER. In accordance with the foregoing, Defendant's Motions to Dismiss (Docket Nos. 7 and 9) are ALLOWED. This case is DISMISSED WITHOUT PREJUDICE. So ordered.(Nicewicz, Craig) (Entered: 01/27/2006) |
| 01/27/2006 | 16 | Judge Nathaniel M. Gorton : ORDER entered. ORDER DISMISSING CASE(Nicewicz, Craig) (Entered: 01/27/2006) |
| 03/13/2006 | 17 | MOTION for Leave to File *Amended Complaint* by Securities & Exchange Commission.(Cadigan, Luke) (Entered: 03/13/2006) |
| 03/13/2006 | 18 | AMENDED COMPLAINT against all defendants, filed by Securities & Exchange Commission.(Cadigan, Luke) (Entered: 03/13/2006) |
| 03/13/2006 | 19 | NOTICE of Change of Address by Luke T. Cadigan *for Securities and Exchange Commission* (Cadigan, Luke) (Entered: 03/13/2006) |
| 03/17/2006 | 20 | Letter/request (non-motion) from Attorney David Thomas, Frank Libby, Warren Feldman. (Attachments: # 1 Exhibit 1)(Sonnenberg, Elizabeth) (Entered: 03/17/2006) |
| 03/22/2006 | 21 | MOTION to Set Aside Judgment *Pursuant to Rule 60(b)* by Securities & Exchange Commission.(Cadigan, Luke) (Entered: 03/22/2006) |
| 03/22/2006 | 22 | MEMORANDUM in Support re 21 MOTION to Set Aside Judgment *Pursuant to Rule 60(b)*, 17 MOTION for Leave to File *Amended Complaint* filed by Securities & Exchange Commission. (Cadigan, Luke) (Entered: 03/22/2006) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/04/2006 10:57:08 | | |
| **PACER Login:** | gt0478 | **Client Code:** | 64599.010200 |

| Description: | Docket Report | Search Criteria: | 1:05-cv-10247-NMG |
|---|---|---|---|
| Billable Pages: | 3 | Cost: | 0.24 |

# EXHIBIT B

United States District Court
District of Massachusetts

```
_____
                                )
UNITED STATES SECURITIES AND    )
EXCHANGE COMMISSION,            )
                                )
          Plaintiff,            )      Civil Action No.
                                )      05-10247-NMG
     v.                         )
                                )
JAMES TAMBONE and ROBERT HUSSEY, )
                                )
          Defendants.           )
_____)
```

### MEMORANDUM & ORDER

GORTON, J.

In this case, the United States Securities and Exchange
Commission ("SEC") alleges that the defendants, James Tambone
("Tambone") and Robert Hussey ("Hussey"): 1) committed fraud in
violation of the Securities Exchange Act of 1934 ("the Exchange
Act") and Rule 10b-5 thereunder, 2) committed fraud in violation
of Section 17(a) of the Securities Act of 1933, 3) aided and
abetted fraud in violation of Sections 206(1) and 206(2) of the
Investment Advisers Act of 1940 ("the Advisers Act") and 4) aided
and abetted in violation of Section 15(c) of the Exchange Act.
The defendants now separately move, pursuant to Fed. R. Civ. P.
12(b)(6), to dismiss the SEC's complaint. Having considered the
memoranda in support of and opposition to these pending motions,
the Court now resolves them as follows.

-1-

I.    **Background**

In its complaint, the SEC alleges that the defendants were
senior executives at Columbia Funds Distributor, Inc. ("Columbia
Distributor"), a broker-dealer registered with the SEC.  Columbia
Distributor served as the principal underwriter and distributor
of over 140 of the mutual funds in the Columbia mutual fund
complex ("the Columbia Funds").  In that capacity, Columbia
Distributor disseminated prospectuses for the Columbia Funds.
Tambone, Columbia Distributor's Co-President, and Hussey,
Columbia Distributor's Senior Vice President and Managing
Director for National Accounts, had responsibility for selling
the Columbia Funds to clients and potential clients.

The SEC alleges that from as early as 1998 and continuing
through September 2003, the defendants entered into, approved and
knowingly permitted arrangements allowing certain preferred
customers to engage in short-term or excessive trading in at
least 16 different Columbia Funds.  Despite their participation
in and knowledge of these arrangements and their awareness of
other short-term or excessive trading by the preferred customers,
the defendants allegedly offered Columbia Funds to other
investors using prospectuses that represented that such trading
was prohibited or indicated a hostility towards such practices.
The SEC contends further that the defendants made material
omissions insofar as they never disclosed those arrangements to

-2-

investors to whom they sold the Columbia Funds.

The SEC filed its complaint against the defendants on February 9, 2005.  The defendants have filed two separate motions to dismiss this case each of which is supported by a memorandum. The SEC filed a single memorandum in opposition which addresses the arguments raised by both defendants.  Because defendants' motions and memoranda contain substantially similar arguments, the Court will address them conjointly.

_____

## II.  **Discussion**

### A.    **Standard of Review for Motions to Dismiss**

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000).

Furthermore, the court must accept all factual allegations

in the complaint as true and draw all reasonable inferences in
the plaintiff's favor. <u>Langadinos</u> v. <u>American Airlines, Inc.</u>,
199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint
are sufficient to state a cause of action, a motion to dismiss
the complaint must be denied. <u>See</u> <u>Nollett</u>, 83 F. Supp. 2d at
208.

**B.    Legal Analysis**

Each defendant argues that the complaint should be dismissed
because it fails to state claims with the particularity required
by Fed. R. Civ. P. 9(b). The defendants also raise other
defenses, including, among other things, failure to allege either
a legally cognizable fraud claim or a claim for aider and abettor
liability.

**1.    Particularity Required by Rule 9(b)**

As a preliminary matter, the parties to this action spill
much ink arguing about the correct application of Fed. R. Civ. P.
9(b) in cases involving securities fraud claims. Rule 9(b)
provides that "[i]n all averments of fraud or mistake, the
circumstances constituting fraud or mistake shall be stated with
particularity." The First Circuit Court of Appeals has held that
Rule 9(b) requires that a complaint allege the "time, place, and
content of the alleged misrepresentations with specificity."
<u>Greebel</u> v. <u>FTP Software, Inc.</u>, 194 F.3d 185, 193 (1st Cir. 1999).
This Court quite recently stated that in the context of fraud

-4-

claims, a complaint must specify: 1) the allegedly fraudulent statements, 2) the identity of the speaker, 3) where and when the statements were made and 4) how the statements were fraudulent. SEC v. Druffner, 353 F. Supp. 2d 141, 148 (D. Mass. 2005)(citing In re Allaire Corp. Sec. Litig., 224 F. Supp. 2d 319, 325 (D. Mass. 2002)).

Despite the rather straight-forward nature of the case law, the SEC has ignited a controversy by arguing that the strict command of Rule 9(b) should be relaxed in the case at bar. First, the SEC asserts that Rule 9(b) must be read alongside Fed. R. Civ. P. 8 which sets forth the general rule of pleading that a complaint contain only "a short and plain statement of the claim" and that each averment be "simple, concise and direct." In light of Rule 8, the SEC contends, citing U.S. ex rel. Franklin v. Parke-Davis, Division of Warner-Lambert Co., 147 F. Supp. 2d 39, 46-47 (D. Mass. 2001), that Rule 9(b) does not require a claimant to set out in detail each and every fact upon which it bases its claims or to plead evidentiary matters. Second, the SEC argues, citing Druffner, that the particularity requirement of Rule 9(b) is relaxed when information giving rise to securities fraud is exclusively held by the defendants. See 353 F. Supp. 2d at 149.

The defendants respond that the SEC's arguments are "preposterous" and, although the description is a bit overblown, this Court, in essence, concurs. With respect to the first of

-5-

the SEC's contentions, the First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions". Greebel, 194 F.3d at 193. See also Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991)("We have been especially rigorous in demanding...factual support in the securities context....").

The SEC's second contention is equally unpersuasive. Although in Druffner it was clear that some of the information the SEC needed was exclusively in the control of the defendants, thereby necessitating a slight relaxation of the Rule 9(b) particularity requirement, that is not the case here. During the course of this investigation, the SEC has taken the testimony of at least 23 witnesses and conducted extensive document discovery. Thus, the rule expressed in Druffner has no application to this case.

As such, this Court rejects the SEC's argument in favor of relaxing the strictures of Rule 9(b). It will apply the particularity requirements in the rigorous manner intended by the First Circuit Court of Appeals.

### 2. Allegation of a Legally Cognizable Fraud Claim Against the Defendants

The elements of an action for securities fraud under Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) and Section 17(a)(1) of the Securities Act are substantially the same under the Supreme Court's precedents. See Aaron v. SEC, 446 U.S. 680,

695 (1980); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 196

(1976).  To succeed on a claim for liability under those

provisions the SEC must show that 1) defendants engaged in

fraudulent conduct, 2) in connection with the purchase or sale of

securities, 3) through the means or instruments of transportation

or communication in interstate commerce or the mails and 4) with

the requisite scienter.  SEC v. Graystone Nash, Inc., 820 F.

Supp. 863, 870-71 (D.N.J. 1993)(citing Aaron, 446 U.S. at 695,

and Hochfelder, 425 U.S. at 196).  Defendants claim that the SEC

has failed to allege facts showing they engaged in fraudulent

conduct or acted with the requisite scienter.

To establish that a defendant engaged in "fraudulent

conduct" as defined by the securities laws, the SEC must show

that the defendant: 1) made an untrue statement of material fact,

2) omitted a fact that rendered a prior statement misleading or

3) committed a manipulative or deceptive act as part of a scheme

to defraud.  See Gross v. Summa Four, Inc., 93 F.3d 987, 992 (1st

Cir. 1996)(superseded by statute on other grounds); SEC v. Randy,

38 F. Supp. 2d 657, 668 (N.D. Ill. 1999).

### a.    Allegation of a Misstatement

The defendants' first argument is that the SEC's complaint

fails to allege that they made any misstatement at all.  This

contention is grounded in the defendants' attempt to parse the

language in the various prospectuses, most notably the so-called

-7-

"Strict Prohibition" language that appeared in prospectuses from 2001 onward, which is allegedly so ambiguous that no reasonable investor would have been misled into believing it strictly prohibited market timing.  That argument need not be addressed, however, for reasons explained below.

### b.    Attribution of a Material Misstatement to Defendants

The defendants contend that even if the language in the prospectuses was materially misleading and did, in fact, materially mislead investors, it is not attributable to them.

In order to be liable for a primary violation of Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act, a defendant must have personally made either an allegedly untrue statement or a material omission.  The Second Circuit Court of Appeals explained, in the context of Section 10(b), that

> a defendant must actually make a false or misleading statement in order to be held [primarily] liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger [primary] liability under Section 10(b).

Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998)(quoting Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997)).

In 2004, the Southern District of New York confronted facts, similar to those in the case at bar, which represented a test of Wright.  In SEC v. PIMCO Advisors Fund Management LLC, the SEC

had brought a civil enforcement action against Kenneth Corba, CEO

of the investment adviser to PIMCO funds.  The complaint alleged

that Corba personally negotiated and managed market timing

arrangements that were contrary to disclosures contained in the

funds' prospectuses and that he was primarily liable for material

misrepresentations and omissions in connection with those

disclosures.  The District Court rejected that argument,

concluding that Corba could not be primarily liable under Wright

because he had not made or participated in the drafting of any of

the alleged misstatements.  341 F. Supp. 2d 454, 466 (S.D.N.Y.

2004)(citing Wright, 152 F.3d at 175).

Taking their cue from PIMCO, the defendants here assert that

they did not play any role in the preparation, drafting or

signing of the prospectuses and, therefore, should not be

primarily liable for material misstatements.  By shifting the

blame, the defendants point the finger at Columbia Advisors, the

entity responsible for all of the representations made in the

prospectuses for the Columbia Funds.

The SEC disputes the defendants' interpretation of PIMCO.

It argues that the case against Corba was dismissed because the

complaint failed to allege that Corba personally drafted the

misleading statements or communicated them to investors.  See

PIMCO, 341 F. Supp. 2d at 467.  By contrast, the SEC's complaint

in this case alleges that the defendants made material

-9-

misstatements and omissions insofar as they "used [the misleading fund prospectuses] in offering and selling the funds directly or indirectly to clients and potential clients."  The SEC emphasizes in its opposition that, by their "communication and dissemination of the misleading prospectuses to investors, Defendants made material misrepresentations and omissions."

The SEC's opposition implicitly concedes that the defendants played no role in preparing, drafting or signing the allegedly misleading prospectuses.  Thus, the alleged violation depends upon whether "use", as pled in the SEC's complaint, qualifies as "communication" or "dissemination".

Rendering the complaint more problematic is the fact that the single sentence about the defendants' "use" of the misleading fund prospectuses is the only statement in the 30-page complaint alleging any offending action on the part of the defendants.  The complaint fails to elaborate on how the defendants "used" the prospectuses and this lack of specificity raises a serious Rule 9(b) issue.  See O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)("[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.").  See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)("bald assertions...and the like need not be credited")(quoting Correa-Martinez v. Arrilaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

Beyond the complaint's Rule 9(b) particularity problems, a more troubling issue is the shaky legal foundation for the SEC's argument that use of the prospectus amounts to communication and dissemination. For example, the SEC's argument with respect to "communication" is not supported by the cases cited in its opposition.

The case that the SEC relies on principally, <u>In Re Rexplore, Inc. Securities Litigation</u>, 671 F. Supp. 679 (N.D. Cal. 1987), is not applicable to the facts alleged in the complaint. Although the District Court held that the plaintiff stated a claim for securities fraud despite the absence of an allegation that the defendants drafted the relevant offering memorandum, the case is inapposite here because the court's holding was premised on allegations that the defendants "made oral misrepresentations, including endorsement of the [mis]statements in the [Offering] Memorandum, when answering plaintiff's inquiries". <u>Id.</u> at 682. No such facts are alleged against the defendants here beyond the scant allegation about "use[]" of the prospectuses.

Other cases cited by the SEC are inapt for similar reasons. <u>See</u>, <u>e.g.</u>, <u>Gabriel Capital, L.P.</u> v. <u>NatWest Fin., Inc.</u>, 94 F. Supp. 2d 491, 502 (S.D.N.Y. 2000)(defendants were alleged to have directly participated in the drafting and preparation of the Offering Memorandum and their names appeared on the cover page of the Memorandum). Even one of the SEC's own opinions cited in its

opposition, <u>In re Everest Securities, Inc.</u>, 62 SEC Docket 1752
(Aug. 26, 1996), is unpersuasive given that the opinion 1) pre-
dated the Second Circuit's authoritative decision in <u>Wright</u> v.
<u>Ernst & Young</u>, 2) did not address Section 10(b), Rule 10b-5 or
Section 17(a) and 3) did not draw a distinction between primary
and secondary liability.

The SEC's argument with respect to "dissemination" is
equally unavailing.  There is no evidence here that the
defendants disseminated any allegedly misleading prospectuses.
Although the complaint alleges that Columbia Distributor
disseminated the prospectuses for the Columbia Funds, that does
not implicate the defendants' personal liability for securities
fraud as primary actors.  The SEC's complaint simply alleges that
the defendants "used [the misleading fund prospectuses] in
offering and selling the funds directly or indirectly to clients
and potential clients" but does not assert that they controlled,
supervised or played any role in the distribution of the
prospectuses.

Moreover, the SEC's claims of primary liability through
dissemination does not withstand the weight of contravening case
law.  <u>See</u> <u>Wright</u>, 152 F.3d at 175 (stating that "a secondary
actor cannot incur primary liability under the Act for a
statement not attributed to that actor at the time of its
dissemination"); <u>Winkler</u> v. <u>NRD Mining, Ltd.</u>, 198 F.R.D. 355, 366

-12-

(E.D.N.Y. 2000)(refusing to impose Section 10(b) liability on the disseminator of misstatements that were attributable to another).

In essence, the SEC has not alleged that the defendants made any untrue or misleading statement of material fact.  The SEC's complaint fails to meet the Rule 9(b) particularity requirement and its legal argument is incapable of being reconciled with PIMCO.

### c.   Attribution of a Material Omission to Defendants

Failing in its effort to demonstrate that the defendants made untrue or misleading statements indicative of fraudulent conduct, the SEC next argues that the defendants omitted facts that rendered a prior statement misleading.  The SEC quotes this Court's decision in Druffner in which it stated that

> [t]he securities laws give rise to a duty to disclose any information necessary to make an individual's voluntary statements not misleading.

353 F. Supp. 2d at 148 (citing Rule 10b-5(b)).  Assuming for the moment that the prospectuses did, in fact, prohibit market timing, the SEC argues that the defendants failed to disclose market timing arrangements to investors, thereby constituting material omissions and fraudulent conduct as defined by the securities laws.

The SEC's contention hinges on the question of whether the defendants had a duty to disclose the market timing arrangements to investors given the language in the prospectuses suggesting

-13-

hostility to market timing.  The SEC asserts that

> Defendants were responsible for selling the Columbia Funds
> to investors and potential investors.  In making these
> sales, and particularly when they used the prospectuses of
> the Columbia Funds to do so, Defendants assumed a duty to
> disclose to investors the existence of the short-term or
> excessive trading arrangements.

The SEC argues that the defendants' material omissions qualify as

fraudulent conduct.

A duty to disclose "does not arise from the mere possession

of non-public information....  Silence absent a duty to disclose,

is not misleading under Rule 10b-5."  Garvey v. Arkoosh, 354 F.

Supp. 2d 73, 81 (D. Mass. 2005).  The First Circuit has

identified three situations that trigger a duty to disclose: 1)

when a corporate insider trades on confidential information, 2)

when a corporation has made inaccurate, incomplete or misleading

prior disclosures and 3) when a statute or regulation requires

disclosure.  Roeder v. Alpha Indus., Inc., 814 F.2d 22, 26-27

(1st Cir. 1987).  Only the second circumstance is in play here.

Although the SEC cites both Druffner and PIMCO in support of

its allegation that the defendants made material omissions,

neither case stands for that proposition.  Both cases make clear

that an individual owes a duty to clarify a misleading statement

only if that statement is attributable to the individual.  See

Druffner, 353 F. Supp. 2d at 148; PIMCO, 341 F. Supp. 2d at 467.

Because the defendants in the case at bar were not responsible

for the misleading disclosures in the funds' prospectuses, they

were under no duty to correct those statements if they became misleading. That responsibility belonged instead to Columbia Advisors which was aware of the market timing arrangements and was, according to the SEC's complaint, "responsible for all representations in the prospectuses."

The SEC contends that the prospectus language is not dispositive of the determination of whether the defendants have made material omissions. Citing Druffner, the SEC argues that merely because "the arrangements may not have expressly violated any provisions set forth in the prospectus of any individual funds does not make the omissions any less actionable."

In Druffner, this Court concluded that:

> [T]he securities laws do not require that a violation of Section 10(b) or Rule 10b-5 must involve a violation of the provisions of the prospectus of a particular fund. The plain language of those provisions proscribes fraudulent devices or statements without limiting their reach to the kinds of statements that are prohibited in a prospectus.

353 F. Supp. 2d at 149. Nonetheless, the Druffner decision is not helpful to the SEC's position. The SEC has not alleged that the defendants employed a fraudulent device (discussed infra), nor that the defendants made any statements to investors, misleading or otherwise. All that the SEC has alleged is that the defendants "used" the misleading fund prospectuses in offering and selling the funds directly or indirectly to clients and potential clients. That vague statement does not satisfy the strict particularity requirement of Rule 9(b).

-15-

#### d.    Scheme to Defraud

The SEC argues that fraudulent conduct, as defined by the securities laws, need not reach the level of misstatements or omissions to be actionable. "Section 10(b) was designed as a catch-all clause to prevent fraudulent practices." Chiarella v. United States, 445 U.S. 222, 226 (1980). As the Supreme Court has stated, a cause of action premised on a scheme to defraud encompasses "the full range of ingenious devices that might be used to manipulate securities prices." Sante Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977).

To plead a scheme to defraud, the SEC must allege that the defendants engaged in a manipulative device or contrivance. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 nn.20-21 (1976). The Supreme Court has stated that "manipulation" refers to practices such as "wash sales, matched orders, or rigged prices that are intended to mislead investors by artificially affecting market activity." Santa Fe, 430 U.S. at 476.

The SEC has failed to allege that the market timing arrangement was a scheme to defraud. The cases cited by the SEC all involved some device that was clearly illegal. See SEC v. Zandford, 535 U.S. 813 (2002)(defendant broker-dealer engaged in wire fraud to misappropriate funds from his clients' account); SEC v. Santos, 355 F. Supp. 2d 917 (N.D. Ill. 2003)(defendants engaged in the bribery of a city treasurer to secure illegally

-16-

the city's investment business); Lernout & Hauspie Sec. Litig.,
236 F. Supp. 2d 161, 173-74 (D. Mass. 2003)(defendants allegedly
entered into sham software licensing agreements in order to
inflate artificially the companies' profits).  This Court's
decision in Druffner also demonstrates the limits of the SEC's
argument because the broker defendants in that case employed a
manipulative device by using numerous broker identification
numbers and opening nearly 200 customer accounts under fictitious
names.  All of the aforementioned schemes fit into the category
of manipulative devices envisioned by the Supreme Court.  The
SEC's allegations in this case clearly do not.

    For example, the SEC argues that the defendants sold the
Columbia Funds to investors without telling them that they had
entered into, approved or knowingly allowed preferred customers
to engage in short-term or excessive trading in contravention of
prospectus disclosures.  The SEC contends that, by their conduct,
the defendants increased their sales and compensation to the
detriment of the long-term investors of the respective funds to
whom those arrangements were never disclosed.  The defect in the
SEC's allegations is that market timing arrangements are not the
kind of sham transactions which have been held to qualify as
schemes to defraud.  The court in PIMCO explicitly stated that
market timing, standing alone, could not constitute a fraudulent
device intended to defraud investors.  341 F. Supp. 2d at 468.

Nothing about the SEC's claim rises to the level of a scheme to defraud under the Supreme Court's definition.

### 3.   Aiding and Abetting

Despite the SEC's failure to plead facts sufficient to save its Section 10(b) and Section 17(a) claims from dismissal, its claims against the defendants for aiding and abetting the misleading disclosures remain open for consideration. Specifically, the SEC alleges that the defendants aided and abetted violations by Columbia Advisors of Sections 206(1) and 206(2) of the Advisers Act and Section 15(c) of the Exchange Act.

To establish aiding and abetting liability, a plaintiff must establish: 1) a primary violation was committed, 2) the defendants had a general awareness that their conduct was a part of an overall activity that was improper and 3) the defendants knowingly and substantially assisted in the primary violation. See Druffner, 353 F. Supp. 2d at 150.

The issue of the requisite scienter for aiding and abetting liability is an open question in this case.  In general, courts

> have held that in the absence of a duty of disclosure, a
> defendant should be held liable as an aider and abettor only
> if the plaintiff proves that the defendant had actual
> knowledge of the improper activity of the primary violator
> and of his role in that activity.

SEC v. Peretz, 317 F. Supp. 2d 58, 64 (D. Mass. 2004)(quoting Clearly v. Perfectune, Inc., 700 F.2d, 774, 777 (1st Cir. 1983)).

With respect to knowing and substantial assistance, a

-18-

defendant's inaction or silence may qualify where the defendant recklessly violates an independent duty to act or manifests a conscious intention to further the principal violation. <u>Austin</u> v. <u>Bradley, Barry & Tarlow, P.C.</u>, 836 F. Supp. 36, 39 (D. Mass. 1993). This Court has already found that the defendants were not under a duty to disclose the market timing arrangements to investors. Thus, in order to plead a claim for aiding and abetting, the SEC's complaint must allege, with particularity, that the defendants' silence or inaction was consciously intended to further the principal violation.

In determining whether silence or inaction was accompanied by conscious intent to assist the primary violation, courts must determine whether the defendant threw "in his lot with the primary violators" and "benefitted" from the alleged silence. <u>Austin</u>, 836 F. Supp. at 39-40. Courts have been "particularly exacting" in making these determinations and "economic motivation alone is too remote and minimal" to demonstrate conscious intent. <u>Id.</u> at 40.

The defendants assert that the SEC's complaint fails to make the case that the defendants meet the legal standard for aiding and abetting and this Court agrees. The SEC has not pled with the requisite degree of particularity that the defendants had "actual knowledge" of the improper activity of the primary violators or of their roles in that activity. Moreover, the

-19-

SEC's complaint has not demonstrated that the defendants possessed the "conscious intent" necessary for their inaction to qualify as knowing and substantial assistance.

The SEC has made no allegation to suggest that the defendants consciously threw in their lot with the primary violators.  Furthermore, its key argument that the defendants benefitted from the market timing arrangements through the collection of fees that flowed from those transactions is insufficient given the <u>Austin</u> decision which held that economic motivation alone is too remote and minimal to demonstrate conscious intent.  The SEC has, once again, offered this Court too little to withstand the defendants' motions to dismiss.

**ORDER**

In accordance with the foregoing, Defendants' Motions to Dismiss (Docket Nos. 7 and 9) are **ALLOWED**.  This case is **DISMISSED WITHOUT PREJUDICE**.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated January 27, 2006

-20-

# EXHIBIT C

# Greenberg Traurig

**David G. Thomas, Esq.**
direct dial: 617-310-6040
thomasda@gtlaw.com

March 16, 2006

**BY HAND DELIVERY**

The Honorable Nathaniel M. Gorton
United States District Court for the
  District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Boston MA 02210

Re:    United States Securities and Exchange Commission v. James Tambone
        and Robert Hussey, U.S.D.C. C.A. No. 05-10247-NMG

Dear Judge Gorton:

On January 27, 2006, this Honorable Court issued its Memorandum & Order granting Defendants' Motions to Dismiss the above-captioned action. That same day, the Court issued a separate "Order of Dismissal," thereby ending the action; also that same day, the Deputy Clerk made entry of that Order ("ORDER DISMISSING CASE") upon the case docket.

Notwithstanding the foregoing, on March 13, 2006—forty-five days after the Court had ordered the action dismissed and the case had been explicitly closed upon the docket—Plaintiff transmitted for electronic filing certain papers captioned "Motion for Leave to File an Amended Complaint," and a purported form of "Amended Complaint." That submission generated an electronic (boldfaced) message to counsel that included the following: **"WARNING: CASE CLOSED on 01/27/2006."**

The undersigned, as counsel to the former defendants in the now-closed case (hereinafter, the "Closed Case") proceed by way of letter to the Court, where—under clear First Circuit precedent, set forth briefly below—final judgment has entered and there is no longer any action in which to file any pleadings. Moreover, the matter is jurisdictional: The Court simply has "no power to allow an amendment to the complaint because there [is] no complaint left to amend." See Mirpuri v. Act Manufacturing, Inc., 212 F.3d 624, 628-29 (1st Cir. 2000) ("Because final judgment entered in this case on June 1, 1999, the

ALBANY

AMSTERDAM

ATLANTA

BOCA RATON

BOSTON

CHICAGO

DALLAS

DENVER

FORT LAUDERDALE

LOS ANGELES

MIAMI

NEW JERSEY

NEW YORK

ORANGE COUNTY, CA

ORLANDO

PHILADELPHIA

PHOENIX

SILICON VALLEY

TALLAHASSEE

TYSONS CORNER

WASHINGTON, D.C.

WEST PALM BEACH

WILMINGTON

ZURICH

Greenberg Traurig, LLP | Attorneys at Law | One International Place | Boston, MA 02110 | Tel 617.310.6000 | Fax 617.310.6001

www.gtlaw.com

The Honorable Nathaniel M. Gorton
March 16, 2006
Page 2

district court correctly perceived that it lacked jurisdiction to permit the filing of an amended complaint on June 28").[1]

The Court's January 27, 2006 Order of Dismissal "left no aspect of the litigation pending," constituted an order that was "immediately appealable," and was thus a "final judgment" under Rule 54 of the Federal Rules of Civil Procedure.  Mirpuri, F.3d at 628 (rejecting "out of hand" plaintiffs' suggestion that the dismissal order somehow was deficient because it failed to use the word "judgment"); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 389 (1st Cir. 1994)("[W]e hold that when a district court uses the words, 'the complaint is dismissed,' without expressly granting leave to amend, this is a 'final decision' from which a timely appeal may be taken.").

While the Court's Memorandum & Order noted that the case was "dismissed without prejudice," the Court did not thereby invite Plaintiff to amend its complaint.  As the Mirpuri Court explained:

> In this circuit, the phrase "without prejudice," when attached to a dismissal order, is not to be read as an invitation to amend, but rather as a signification that the judgment does not preclude a subsequent lawsuit on the same cause of action either in the rendering court or in some other forum. If leave to amend is contemplated, we require an express judicial statement to that effect because doing so avoids confusion over when a plaintiff's right to amend a dismissed complaint terminates, the order becomes final, and the time for appeal begins to run.

Mirpuri, 212 F.3d at 628 (citation omitted).

In short, final judgment entered in the Closed Case long ago. That final judgment has been neither amended nor set aside.  As a jurisdictional matter, no amended pleadings may now be filed.  Mirpuri, 212 F.3d at 628 ("[A] district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set aside or vacated pursuant to Fed.R.Civ.P. 59 or 60.") (citation omitted).

---

[1]  For the Court's convenience, a copy of the First Circuit decision in Mirpuri is attached.

The Honorable Nathaniel M. Gorton
March 16, 2006
Page 3

Consistent with the foregoing, undersigned counsel have prepared and submitted this letter. Should the Court prefer counsel to proceed in some other fashion, we would of course be happy to comply.

Respectfully submitted,                              Respectfully submitted,

Frank A. Libby, Jr.                                  David G. Thomas
Kelly, Libby & Hoopes, P.C.                          Greenberg Traurig, LLP
Counsel to Robert Hussey                             Counsel to James Tambone

and

Warren Feldman
Clifford Chance
Counsel to Robert Hussey

Enc.

Cc:    **By Hand Delivery**
       David Bergers, Esq.
       Luke T. Cadigan, Esq.
         United States Securities and Exchange Commission

       **By E-Mail (without enclosure)**
       Douglas S. Brooks, Esq. (dbrooks@klhboston.com)
       Warren L. Feldman, Esq. (warren.feldman@cliffordchance.com)
       Frank A. Libby, Jr., Esq. (falibby@klhboston.com)
       David Meister, Esq. (david.meister@cliffordchance.com)
       Michelle E. Williams, Esq. (michelle.williams@cliffordchance.com)
       A. John Pappalardo, Esq. (pappalardoj@gtlaw.com)
       John A. Sten, Esq. (stenj@gtlaw.com)



212 F.3d 624

Page 1

212 F.3d 624, 46 Fed.R.Serv.3d 900

(Cite as: 212 F.3d 624)

C

**Briefs and Other Related Documents**

United States Court of Appeals,
First Circuit.
Shashi L. MIRPURI, Individually and on Behalf of
All Others Similarly Situated,
et al., Plaintiffs, Appellants,
v.
ACT MANUFACTURING, INC., et al.,
Defendants, Appellees.
Nos. 99-1938, 99-1939.

Heard April 5, 2000.
Decided May 5, 2000.

Investor brought securities class action. The United States District Court for the District of Massachusetts, Douglas P. Woodlock, J., dismissed complaint, and investor appealed. The Court of Appeals, Selya, Circuit Judge, held that: (1) district court lacked jurisdiction to permit filing of amended complaint, and (2) plaintiffs' failure to file timely notice of appeal was not excused by good cause or excusable neglect.

Affirmed.

**West Headnotes**

**[1] Federal Courts** ⊆➝817
170Bk817 Most Cited Cases
Grant or denial of motion for leave to file amended complaint is reviewed for abuse of discretion. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Federal Courts** ⊆➝813
170Bk813 Most Cited Cases
Grant or denial of motion to extend time for filing notice of appeal is reviewed for abuse of discretion.

**[3] Federal Courts** ⊆➝812
170Bk812 Most Cited Cases
Court abuses its discretion if it predicates discretionary decision on mistaken view of law.

**[4] Federal Courts** ⊆➝763.1
170Bk763.1 Most Cited Cases
Court of Appeals will not affirm denial of leave to amend unless there appears to be adequate reason for the denial, such as undue delay, bad faith, dilatory motive, futility of amendment or prejudice. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[5] Federal Civil Procedure** ⊆➝1838
170Ak1838 Most Cited Cases
Although order dismissing case without leave to amend did not use word "judgment" and dismissal was "without prejudice," dismissal order was final and district court lacked jurisdiction to permit filing of amended complaint; phrase "without prejudice," was not invitation to amend, but rather signified that judgment did not preclude subsequent lawsuit on same cause of action either in rendering court or in some other forum. Fed.Rules Civ.Proc.Rules 59, 60, 28 U.S.C.A.

**[6] Federal Courts** ⊆➝654
170Bk654 Most Cited Cases
Entry of judgment need not employ talismanic language nor use any specific set of words to commence time for appeal. F.R.A.P.Rule 4(a), 28 U.S.C.A.

**[7] Federal Civil Procedure** ⊆➝2579
170Ak2579 Most Cited Cases
Final judgment occurs where action is dismissed, leave to amend is explicitly denied, and order is embodied in separate document.

**[8] Federal Courts** ⊆➝666
170Bk666 Most Cited Cases
Temporal stricture for filing notice of appeal is mandatory and jurisdictional. 28 U.S.C.A. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

2107(a); F.R.A.P.Rule 4(a)(1)(A), 28 U.S.C.A.

**[9] Federal Courts** ☜653
170Bk653 Most Cited Cases
Where there are no forces beyond control of would-be appellant that prevent him from taking timely steps to preserve his rights, "good cause" has no applicability and extension of time for appealing can be justified only by showing of excusable neglect. F.R.A.P.Rule 4, 28 U.S.C.A.

**[10] Federal Courts** ☜669
170Bk669 Most Cited Cases
Even if district court's decision was unclear as to its finality, that was not good cause for plaintiffs' failure to file notice of appeal within 30 days of entry of dismissal, as would support extension of time for appeal, where clerk also entered unambiguous "[c]ase closed" notation on docket, and plaintiffs could have discovered this telltale simply by checking docket in person or on-line at any time thereafter. F.R.A.P.Rule 4, 28 U.S.C.A.

**[11] Federal Courts** ☜653
170Bk653 Most Cited Cases
In determining existence of excusable neglect, as would support extension of time for appeal, court must take account of all relevant circumstances surrounding movant's omission, including danger of prejudice to non-movant, length of delay and its potential impact on judicial proceedings, reason for delay, including whether it was within reasonable control of movant, and whether movant acted in good faith. F.R.A.P.Rule 4, 28 U.S.C.A.

**[12] Federal Courts** ☜653
170Bk653 Most Cited Cases
Mere inadvertence, ignorance of rules, or mistakes construing rules do not usually constitute excusable neglect, as would support extension of time for appeal; rather, would-be appellant must demonstrate unique or extraordinary circumstances. F.R.A.P.Rule 4, 28 U.S.C.A.

**[13] Federal Courts** ☜653
170Bk653 Most Cited Cases
Plaintiffs' misconstruction of order dismissing their case without prejudice as not final did not demonstrate excusable neglect, as would support extension of time for appeal; memorandum decision that accompanied dismissal order explicitly rejected plaintiffs' offer to amend their complaint anew and explained in the most transparent of terms court's intention to act with "finality in this case." F.R.A.P.Rule 4, 28 U.S.C.A.

**[14] Federal Courts** ☜653
170Bk653 Most Cited Cases
Plaintiffs' reliance on telephonic inquiry, in lieu of checking the docket, was not excusable neglect, as would support extension of time for appeal. F.R.A.P.Rule 4, 28 U.S.C.A.
*626 Brian P. Murray, with whom Stephen Moulton , Nancy Freeman Gans, Moulton & Gans, LLP, Karl P. Barth, Hagens Berman, P.S., Lionel Z. Glancy, Neal A. Dublinsky, David Pastor, Gilman & Pastor, and Rabin & Peckel, LLP were on brief, for appellants.

Brian E. Pastuszenski, with whom Kevin J. O'Connor, Anthony J. Canata, Matthew A. Wolfman , and Testa, Hurwitz & Thibeault, LLP were on brief, for appellees.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

This procedural motley requires us to determine when, and under what circumstances, an order dismissing an action "without prejudice" is final and, hence, appealable. Along the way, we also must determine whether the district court erred either by rejecting the plaintiffs' belated attempt to amend their complaint or by refusing to extend the time within which they might file a notice of appeal. Concluding, as we do, that the lower court handled the matter appropriately in all respects, we affirm.

**I. BACKGROUND**

On February 25, 1998, ACT Manufacturing, Inc. (ACT) announced that it had an unanticipated inventory shortfall and that it would delay the announcement of its 1997 fourth-quarter and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624

Page 3

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

year-end earnings. [FN1] In response, the price of its stock tumbled and a shareholder, Shashi L. Mirpuri, filed this class action. Mirpuri's complaint alleged, inter alia, that ACT and two of its senior officers had violated federal securities laws.

> FN1. On March 31, 1998, ACT estimated the size of the deficiency at $13,100,000 and concluded that "the ultimate cause of the shortfall could not be finally determined."

At a conference held on August 12, 1998, the district court indicated its intention to appoint three other individuals as co-lead plaintiffs. The defendants raised no objection to the appointment but informed the court that they planned to file a motion to dismiss on the ground that the complaint did not allege facts sufficient to support a strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(2); *see also Greebel v. FTP Software, Inc.,* 194 F.3d 185, 191-201 (1st Cir.1999). To forfend such a motion, the court allowed the plaintiffs sixty days in which to file an amended complaint. The plaintiffs availed themselves of this opportunity and the defendants thereafter moved to dismiss the amended complaint. The plaintiffs opposed the motion.

The district court held a hearing on April 28, 1999. Near the end of that session, the plaintiffs offered to amend the complaint for a second time. The court unequivocally refused the offer, stating:
> No. There's one shot on it, frankly. And I made it clear, I think, at the first hearing that we had, that the opportunity to amend complaints is not a reenactment of Scheherazade. You tell the story maybe twice, but not endlessly night after night.
At the close of the hearing, the court reserved decision on the motion to dismiss.

In due course, Judge Woodlock wrote a memorandum decision that explained his reasons for granting the motion to dismiss. The final footnote states in pertinent part:
> This dismissal is ... without prejudice.... To be sure, at the Scheduling Conference in this matter, I identified certain shortcomings in Plaintiffs' pleadings and afforded them the opportunity to

file an amended complaint. They did so. But when the course of the discussion at the hearing on the motion to *627 dismiss appeared to be proceeding in a direction adverse to their amended complaint, plaintiffs' counsel suggested a willingness to file yet another amended complaint containing additional but unidentified details to particularize their pleadings further.
The plaintiffs were given fair warning both of the deficiencies in their initial complaint and the need to draft an amended complaint upon which the court could finally act at the motion to dismiss stage. They were afforded adequate time to do so. The evaluation of pleadings cannot be extended endlessly. These plaintiffs have failed in their effort to present a complaint which can withstand scrutiny and that failure should be recognized with finality in this case. Whether they can state a claim in some other case is not a matter, however, I will attempt to preclude by a dismissal, as defendants request, with prejudice.
On June 1, 1999, the clerk entered Judge Woodlock's memorandum decision on the docket, along with a separate order that dismissed the action and a notation that read "[c]ase closed."

Twenty-seven days later, the plaintiffs filed a motion for permission to file a further amended complaint. The district court denied this motion on July 13, explaining that "final judgment ha[s] entered in *this* case." On July 26, the plaintiffs, apparently aware that the thirty-day appeal period had expired, requested an extension of time within which to file a notice of appeal from the June 1 dismissal order. Finding neither good cause nor excusable neglect, the district court rejected this request on August 10. These appeals ensued.

**II. ANALYSIS**

[1][2][3] We begin by noting what is *not* before us. The plaintiffs apparently concede that if the June 1 dismissal order was final and appealable, they allowed the time for filing a notice of appeal from that order to expire-- and concession or not, it is nose-on-the-face plain that any such appeal would be time-barred. *See* Fed. R.App. P. 4(a)(1)(A). Initially, at least, this narrows the lens of inquiry to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624

Page 4

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

the question of finality and to the propriety of two other orders, namely, the July 13 order denying leave to amend and the August 10 order refusing to extend the time for appealing. [FN2] As to the first of these matters, we afford plenary review to the district court's legal conclusion that final judgment had entered. *See Exxon Corp. v. Esso Workers' Union, Inc.,* 118 F.3d 841, 844 (1st Cir.1997). We review the latter two rulings for abuse of discretion. *See Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 59 (1st Cir.1990) (stating the standard of review for the granting or denial of a motion for leave to file an amended complaint); *Gochis v. Allstate Ins. Co.,* 16 F.3d 12, 14 (1st Cir.1994) (per curiam) (same, in respect to the granting or denial of a motion to extend the time for filing a notice of appeal). We remain mindful, however, that a court invariably abuses its discretion if it predicates a discretionary decision on a mistaken view of the law. *See Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295 (1st Cir.2000); *United States v. Snyder,* 136 F.3d 65, 67 (1st Cir.1998).

> FN2. We say "initially" because, were we to determine that the district court erred in refusing to extend the appeal period, we might then proceed to consider the merits of the district court's dismissal order.

#### A. *Leave to Amend.* [FN3]

> FN3. Since the question of finality is bound up with the district court's treatment of the motion for leave to amend, we deal with it as part and parcel of this discussion.

[4] The plaintiffs premise their claim that the district court erred in failing to grant leave to amend on familiar axioms. The Civil Rules declare that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Under this mandate, a denial of leave to amend **\*628** cannot be founded on judicial whim. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Unless there appears to be an adequate reason for the denial of leave to amend (*e.g.,* undue delay, bad faith, dilatory motive, futility of amendment, prejudice), we will not affirm it."

*Glassman v. Computervision Corp.,* 90 F.3d 617, 622 (1st Cir.1996). The plaintiffs proceed to argue that none of these exemplars applies in this instance and, therefore, the district court's denial of their motion cannot be upheld.

This line of argument suffers from tunnel vision: it overlooks the district court's determination that, at the time the plaintiffs filed their motion, a final judgment already had been entered. If this perception is correct, the district court had no power to allow an amendment to the complaint because there was no complaint left to amend. *See Maldonado v. Domínguez,* 137 F.3d 1, 11 (1st Cir.1998) ("[A] district court cannot allow an amended pleading where a final judgment has been rendered unless that judgment is first set aside or vacated pursuant to Fed.R.Civ.P. 59 or 60."). [FN4] The question, then, is whether a final judgment in fact entered on June 1, 1999.

> FN4. The reference to Rules 59 and 60 does not give succor to the plaintiffs. They filed no motion at all within the ten-day period allowed under Fed.R.Civ.P. 59(e), and they never moved to set the judgment aside under Fed.R.Civ.P. 60(b). Thus, their current argument can succeed only if no final judgment was entered on June 1.

[5][6] The plaintiffs suggest, without citation of relevant authority, that the June 1 dismissal order somehow is deficient because it fails to use the word "judgment." This suggestion elevates form over substance, and we reject it out of hand. The entry of judgment need not employ talismanic language nor use any specific set of words. *See Danzig v. Virgin Isle Hotel, Inc.,* 278 F.2d 580, 582 (3d Cir.1960); *see also* Fed. R.App. P. 4(a) (outlining the process for appealing from a "judgment or order").

The plaintiffs also contend that the court's dismissal of their action "without prejudice" stripped the dismissal order of the requisite finality and necessarily encompassed an opportunity to amend the complaint. This argument is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624                                                                                           Page 5

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

constructed out of whole cloth; one circuit seems to view a dismissal without prejudice as an implicit invitation to amend. *See Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976) (per curiam). In that circuit, such an order is final and appealable only if the plaintiff "cannot amend or declares his intention to stand on his complaint." *Id.* at 952. This court, however, has rejected that position. [FN5] *See Acevedo-Villalobos v. Hernandez,* 22 F.3d 384, 389 (1st Cir.1994) (holding squarely that a final, appealable judgment results whenever a district court dismisses a complaint "without expressly granting the plaintiff leave to amend"). In this circuit, the phrase "without prejudice," when attached to a dismissal order, is not to be read as an invitation to amend, but rather as a signification that the judgment does not preclude a subsequent lawsuit on the same cause of action either in the rendering court or in some other forum. If leave to amend is contemplated, we require an express judicial statement to that effect because doing so "avoids confusion over when a plaintiff's right to amend a dismissed complaint terminates, the order becomes final, and the time for appeal begins to run." *Id.* at 388 (quoting *Quartana v. Utterback,* 789 F.2d 1297, 1300 (8th Cir.1986)).

> FN5. In all events, the instant case does not implicate the Third Circuit's approach to ambiguous dismissal orders. Here, unlike in *Borelli,* the district court order expressly *denied* leave to amend. No invitation reasonably could have been implied in light of this explicit rejection.

The plaintiffs' attempt to derive support for their "without prejudice" argument from *North Carolina National Bank v. Montilla,* 600 F.2d 333 (1st Cir.1979) (per *629 curiam), is unavailing. There, the district court had dismissed a counterclaim "without prejudice," stating that it could be raised again during the course of the pending proceedings if new evidence were adduced. *See id.* at 334. We held that this order--like an order dismissing a complaint but expressly reserving leave to amend--was not final for the purpose of conferring appellate jurisdiction. *See id.* at 334-35. The crucial distinction between the dismissal orders in

*Montilla* and in the case at bar is that the latter left no aspect of the litigation pending and was therefore immediately appealable. *See id.* at 335 n. 2 (specifically distinguishing "a dismissal 'without prejudice' that is nevertheless a final order because the litigation is entirely terminated").

The plaintiffs' reliance on *Sandul v. Larion,* 119 F.3d 1250 (6th Cir.1997), likewise misses the mark. In *Sandul,* the district court entered summary judgment against the plaintiff on all except one of his claims (which it dismissed without prejudice). *See id.* at 1253. The Sixth Circuit ruled that Sandul could not appeal the dismissal of the last-mentioned claim "because the dismissal was without prejudice." *Id.* at 1254. The court then stated that "[s]uch dismissal is not a final judgment, and thus, no appeal is permitted." *Id.*

A leading treatise fittingly describes this aspect of *Sandul* as "puzzling." 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.6, at 145 n. 18 (2d ed. Supp.2000). The quoted language cannot be taken literally, as such a reading would contradict longstanding Supreme Court precedent. *See United States v. Wallace & Tiernan Co.,* 336 U.S. 793, 795 n. 1, 69 S.Ct. 824, 93 L.Ed. 1042 (1949) ("That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned."). There is another possible explanation. In support of its pronouncement, the *Sandul* court cited *Laczay v. Ross Adhesives,* 855 F.2d 351 (6th Cir.1988)--a case holding that no appeal can be taken from a *voluntary* dismissal without prejudice. *See id.* at 354. If *Sandul* turned on voluntariness (a fact that is not clear from the opinion), it is of no help to the plaintiffs in the case at hand. If, however, *Sandul* actually stands for the proposition that dismissals without prejudice are per se unappealable, we are bound not only by *Wallace & Tiernan* but also by applicable First Circuit precedent to reject it. *See, e.g., Pratt v. United States,* 129 F.3d 54, 57-58 (1st Cir.1997) ( "Appellate courts routinely exercise jurisdiction over claims dismissed without prejudice when the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

Page 6

dismissal contains sufficient indicia of finality.").

[7] To sum up, the district court's memorandum decision, echoing the judge's earlier comments from the bench, slammed the door shut on the possibility of future amendments to the complaint. Given the court's express rejection of the plaintiffs' offer to assemble a further amended complaint, it is difficult to imagine how the point could have been put more clearly. And apart from the flawed arguments discussed above, the plaintiffs make no other challenge to either the form or the sufficiency of the judgment. Nor could they: the dismissal order was set forth on a separate document and duly docketed in conformity with the applicable provisions of the Civil Rules. *See* Fed.R.Civ.P. 58, 79. In our view, a final judgment occurs where, as here, an action is dismissed, leave to amend is explicitly denied, and the order is embodied in a separate document. *See* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *supra*, § 3914.1, at 494 (2d ed.1992). Because final judgment entered in this case on June 1, 1999, the district court correctly perceived that it lacked jurisdiction to permit the filing of an amended complaint on June 28.

**B. Extension of Time.**
[8] In the federal system, a notice of appeal from the district court to the court *630 of appeals must be filed "within 30 days after the judgment or order appealed from is entered." Fed. R.App. P. 4(a)(1)(A); *accord* 28 U.S.C. § 2107(a). This temporal stricture is mandatory and jurisdictional. *See Scola v. Beaulieu Wielsbeke, N.V.*, 131 F.3d 1073, 1073-74 (1st Cir.1997). There is, however, an escape hatch: on motion filed within thirty days after the time prescribed by Rule 4(a) expires, the district court may extend the time for filing a notice of appeal so long as the movant demonstrates either good cause or excusable neglect. *See* Fed. R.App. P. 4(a)(5).

Final judgment entered in this case on June 1, 1999. The plaintiffs filed their motion to extend the time to appeal from that judgment fifty-five days thereafter, and thus came within the window of opportunity framed by Rule 4(a)(5). But the district court dashed their hopes, finding that their

tardiness was not a product of either good cause or excusable neglect.

On appeal, the plaintiffs base their challenge to this finding principally on two circumstances. First, they maintain that the lower court's June 1 decision and order, taken together, were ambiguous as to the possibility of subsequent amendment. Second, they allege that one of their attorneys telephoned the district court clerk's office on June 4 to ask whether judgment had been entered on the docket and that the (unidentified) person with whom he conversed responded that it had not.

[9] The plaintiffs' effort to invoke the "good cause" exception need not detain us. The reference to "good cause" was added in 1979. *See* Fed. R.App. P. 4 advisory committee's note. The drafters augmented the rule to take account of a narrow class of cases in which a traditional "excusable neglect" analysis would be inapposite. *See Pontarelli v. Stone*, 930 F.2d 104, 109-11 (1st Cir.1991) (discussing purpose of incremental "good cause" standard). An illustrative case is *Scarpa v. Murphy*, 782 F.2d 300 (1st Cir.1986)--a case in which the putative appellant's tardiness in filing a notice of appeal resulted entirely from external causes. *See id.* at 301. In such a situation, there is no neglect (and, thus, nothing to excuse). In contrast, where there are no forces beyond the control of the would-be appellant that prevent him from taking timely steps to preserve his rights, "good cause" has no applicability and an extension of the time for appealing can be justified only by a showing of excusable neglect. *See Virella-Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 453-54 (1st Cir.1995).

[10] The case at hand does not fit within the isthmian confines of the "good cause" rubric. Even were we to assume (counterfactually) that the district court's decision was unclear as to its finality, the clerk also entered an unambiguous "[c]ase closed" notation on the docket, and the plaintiffs could have discovered this telltale simply by checking the docket in person or on-line at any time thereafter. We previously have held that reliance on telephonic inquiries to the clerk's office, without

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624                                                                                    Page 7

212 F.3d 624, 46 Fed.R.Serv.3d 900

**(Cite as: 212 F.3d 624)**

more, cannot constitute good cause. *See id.; cf. Kelley v. NLRB*, 79 F.3d 1238, 1249 (1st Cir.1996) ("We think it plain that an attorney's reliance on oral information, provided over the telephone and by a low-level employee, is not reasonable."). We unhesitatingly reiterate that sensible holding today.

[11][12] This brings us to the crux of the plaintiffs' argument: their claim of excusable neglect. In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Court explained that such determinations are equitable in nature. *See id.* at 395, 113 S.Ct. 1489. Accordingly, an inquiring court must "tak[e] account of all relevant circumstances surrounding the [movant's] omission," including "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the *631 movant acted in good faith." *Id.* Mere "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* at 392, 113 S.Ct. 1489. Rather, the would-be appellant must demonstrate unique or extraordinary circumstances. *See Gochis*, 16 F.3d at 14.

[13] Refined to bare essence, the plaintiffs hinge their claim of excusable neglect on the notion that they plausibly misconstrued the June 1 dismissal order. We do not gainsay the possibility that a plausible misconstruction of a court order may on rare occasions meet the requirements for excusable neglect. *See Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 232-34 (7th Cir.1990) (explaining that a plausible misconstruction of the law or rules can amount to excusable neglect). Here, however, the plaintiffs' professed reading of the dismissal order was wholly implausible. The memorandum decision that accompanied the dismissal order explicitly rejected the plaintiffs' offer to amend their complaint anew and explained in the most transparent of terms the court's intention to act with "finality in this case." A misunderstanding that occurs because a party (or his counsel) elects to

read the clear, unambiguous terms of a judicial decree through rose-colored glasses cannot constitute excusable neglect. *See Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir.1997) (holding that an attorney's misreading of the plain language of a rule cannot constitute excusable neglect).

[14] The other circumstances to which the plaintiffs allude likewise fail sufficiently to distinguish their case from the mine-run. Because we already have mentioned most of these circumstances, we will be brief. The plaintiffs' reliance on a telephonic inquiry, in lieu of checking the docket, constituted neglect—but not excusable neglect. Their assertion that the decision and order were misleading when read together represents a triumph of hope over reason. The fact that the district court, by dismissing the action "without prejudice," left open the possibility of another suit did not create any legitimate confusion as to the finality of its judgment in this case. *See Wallace & Tiernan*, 336 U.S. at 794 n. 1, 69 S.Ct. 824. Against this backdrop, we cannot fault the district court's discretionary decision to deny the motion for extended time to appeal. *See Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir.1997) (holding that "[i]gnorance of the Supreme Court's docket, although 'neglect,' is not 'excusable' "); *Joslin v. Wechsler (In re Wechsler* ), 246 B.R. 490, 495 (S.D.N.Y.2000) (affirming a bankruptcy court's finding of no excusable neglect where the party "failed to check the docket for weeks"); *E.I. Dupont De Nemours & Co. v. United States*, 15 F.Supp.2d 859, 861 (Ct. Int'l Trade 1998) (holding that "reliance on legal advice of the clerk's office or counsel's misinterpretation of the law" is not excusable neglect); *cf. Mennen Co. v. Gillette Co.*, 719 F.2d 568, 570 (2d Cir.1983) (finding excusable neglect where the clerk violated a direct order of the court, relied upon by the would-be appellant, to give notice of the entry of judgment).

We need go no further. Because the plaintiffs' failure to file a timely notice of appeal was not excused by any extraordinary circumstances, the district court did not abuse its discretion in denying their motion for an extension of time.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

212 F.3d 624

212 F.3d 624, 46 Fed.R.Serv.3d 900

(Cite as: 212 F.3d 624)

*Affirmed.*

212 F.3d 624, 46 Fed.R.Serv.3d 900

**Briefs and Other Related Documents (Back to top)**

• 99-1938 (Docket) (Aug. 31, 1999)

• 99-1939 (Docket) (Aug. 31, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.